(Decided 25th June, 1873.)

---

ENNALLS HUBBARD and ELLEN T. HUBBARD *vs.* WILLIAM BARCUS and WILLIAM S. VANSTAVERN.

*Administration on the estate of a Married woman dying Intestate—Construction of Art. 45, sec. 2, and Art. 93, sec. 32, of the Code.*

E. H. and E. T. H., his wife, filed a petition in the Orphans' Court, stating that F. A. V. had died intestate leaving W S. V., her husband, and three children, one of whom was E. T. H., surviving her. The petition represented that the deceased was possessed of valuable personal estate, and was largely indebted to the petitioners, and prayed the appointment of the petitioners, or some one else to administer. W. S. V., the husband, and W. B., a son, of the deceased answered, but not under oath, denying the indebtedness of the deceased to the petitioners, claiming that the personal estate and *choses in action* of the deceased devolved, by operation of law, on the surviving husband, and alleging that, if the deceased was indebted to the petitioners, their remedy was in equity. E. H. was examined on behalf of the

petitioners, and deposed that the deceased died possessed of personal estate and debts due her, and was largely indebted to the petitioners. HELD :

That the Orphans' Court properly refused to grant letters of administration.

APPEAL from the Orphans' Court of Caroline County.

The facts are stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., BRENT, BOWIE, GRASON, MILLER and ROBINSON, J.

*J. W. Bryant,* for the appellants.

The children of a deceased married woman, during the survivorship of the husband, can of right claim of the Orphans' Court, letters of administration. *Art.* 93, *secs.* 14 *and* 230, *and Art.* 45, *sec.* 2 *of the Code.*

A creditor of a deceased married woman, during the life of the husband, can of right claim of the Orphans' Court, letters of administration. *Art.* 19, *secs.* 14, 30, *and* 231, *of the Code; Weisker vs. Lowenthal,* 31 *Md.,* 413.

*Jno. B. Brown and Thos. J. Keating,* for the appellees.

The surviving husband, *jure mariti,* under the statute law, is entitled to collect, and reduce into possession, all *choses in action* belonging to the wife, and they devolve on him as his absolute property, if, during his life, he exercises his legal rights. If the wife is indebted at the time of her death in such a manner as to render her *choses in action* liable for the liquidation thereof, they can only be reached through the medium of a Court of Equity, by a proceeding *in rem,* or by a proceeding against the surviving husband, in the Courts of Law or Equity, as trustee or *quasi* administrator. *Stockett, Admr. vs. Bird's Admr.,* 18 *Md.,* 488 ; *Art.* 45, *secs.* 2 *and* 12 ; *Art.* 93, *sec.* 32, *of the Code.*

If the property was acquired before the Code, the Orphans' Court did not possess the power or authority of

granting letters of administration, so as to affect the same, or interfere with the marital rights of the surviving husband. *Hatton vs. Weems,* 12 *G. & J.,* 112; *Jones & White vs. Brown,* 1 *Md. Ch. Dec.,* 191; *Cooney, Admr. vs. Woodburn, Admr.,* 33 *Md.,* 327; *Schindel vs. Schindel,* 12 *Md.,* 121, 312-3.

If the property was acquired subsequent to the Code, and in its devolution, subject to the operation of its provisions, the case is not altered. *Art. 45, secs.* 1 *and* 2 *of the Code; Meyer vs. Eisler,* 29 *Md.,* 32.

BOWIE, J., delivered the opinion of the Court.

The appellants, by their petition, filed in the Orphans' Court of Caroline County, on the 14th of September, 1872, alleged that Frances A. Vanstavern of said county, had then lately departed this life intestate, being at the time of her death, possessed of a large and valuable personal estate, then in said county, and indebted to the petitioners, in a large sum; that the deceased left a husband, Wm. S. Vanstavern, and three children, one of whom was Ellen T. Hubbard, the petitioner, and two others, William and Charles M. Barcus, the latter a non-resident.

The petitioners prayed, that the said Wm. S. Vanstavern, the husband, and Wm. Barcus, the son, be summoned to show cause, why letters of administration should not be granted the petitioners, or some others, in case of refusal on the part of the defendants, to administer. The defendants appeared and answered, but without oath, averring that the deceased's estate consisted of a few articles of household furniture etc., which devolved upon her surviving husband, by operation of law, without administration.

They denied that the deceased was indebted at the time of her death, to the appellants; and further averred that the deceased being at the time of her death, a married woman, and leaving a husband surviving her, who is still

living, all the personal property the deceased possessed, if it consisted of specific articles, acquired since the adoption of the Code of Public General Laws of 1860, devolved on the husband for life by virtue of sec. 2, Art. 45, thereof, without the intervention of an administrator; and if possessed at the time of deceased's marriage, (which occurred in 1857,) or acquired after, and before the adoption of the Code of 1860, the same by virtue of the marriage and her death, became absolutely, in the absence of any contract or deed of settlement to the contrary, the property of the surviving husband.

That if the estate of the deceased consisted of *choses in action*, in existence before or subsequent to the Code, they devolved on the husband, by operation of law, if he reduced them to possession during his life, and that the appellants' remedy, if the deceased was indebted to them, was in Equity—the Orphans' Court having no authority in law, to grant letters in such a case.

No replication was filed to the answers, but the petitioners examined Ennalls Hubbard, one of the petitioners, on interrogatories, who deposed, that he was acquainted with the deceased; "she had right smart of personal property, and considerable debts due her;" that she was indebted to the witness in the sum of $3300, principal, and he believed, she owed his wife, between $200 and $300.

Whereupon, the Orphans' Court, on the same day passed an order, reciting that the petition, answers and testimony of Ennalls Hubbard, being duly considered, it was adjudged and decreed, that the petition filed by Ennalls Hubbard and wife, be dismissed with costs to the respondents,—"the Court considering that no administration can be had upon the estate of Frances A. Vanstavern, during the life of her surviving husband."

From which order the appeal is taken.

It is not necessary to decide in this case whether, under any circumstances, administration can be granted by the

Orphans' Court, on the estate of a married woman dying intestate, her husband surviving, but confining ourselves to the facts presented by the record, to determine whether the order appealed from was correct.

Although the answers do not expressly admit the intestacy of the deceased, and it has not been proved, it is necessarily implied from the nature of the defence, and the reasons assigned by the Court below for their order; we shall therefore assume, it is admitted.

The testimony of the petitioner, the only witness examined in the case, taken in connection with the interrogatories, and in its popular sense, must be understood as meaning, that the deceased owned at the time of her death, and died possessed of, personal property acquired after the adoption of the Code, (if acquired before, it would have been her husband's,) and had owing to her, debts of considerable amount, and was indebted to the petitioner in large sums of money. The husband, by virtue of the common law, or the English statutes which existed and were applicable to our colonial condition, prior to the adoption of the State Constitution, had the exclusive right to administer on the personal estate of his deceased wife.

By the Act of Assembly of 1798, ch. 101, entitled an Act for amending and reducing into one system the laws and regulations concerning last wills and testaments, the duties of executors, administrators, etc., sub-ch. 5, sec. 8, it was enacted, "if the intestate be a married woman it shall not, as *heretofore, be necessary for her husband to take out letters of administration*, but all her *choses in action* shall devolve upon her husband, in the same manner as if he had taken out such letters; provided, that if he shall not, in his lifetime, reduce the said *choses in action* into possession, or obtain judgment thereon, the said *choses in action* shall devolve on her representatives, and administration may be granted accordingly."

The husband being at common law, *jure mariti*, owner of all the personal and real chattels of his wife in possession, the letters of administration were only necessary to enable him to reduce into possession, or recover, her *choses in action;* and to these he became entitled absolutely, if reduced into possession in his lifetime, prior or subsequent to the death of his wife.

According to the English law, if the husband omitted as administrator of his wife, to reduce her *choses in action* into possession, or recover judgment upon them, and letters of administration after his death were granted to the next of kin of the wife, such administrator was considered in equity as trustee for the representative of the husband. *Vide* 1 *Williams on Executors*, 360.

The Code of Public General Laws, condensing the previous legislation, on the rights of husband and wife, in Art. 45, secs. 1 and 2, declares "the property, real and personal, belonging to a woman *at the time of* her marriage, and all property which she may acquire or receive after her marriage, shall be protected from the debts of her husband, and not in any way liable for the payment thereof, and such property she shall hold for her separate use, with power of devising the same, as fully as if she were a *féme sole*, or may convey the same by a joint deed, with her husband;" "provided, that if she die intestate, leaving children, her husband *shall have a life estate in her property*, real and personal, but if she die intestate, leaving no children, her husband shall have a life estate in her real property, and *her personal property shall vest in him absolutely.*"

The laws thus condensed in the Code, totally changed the rules of the common law, as to the rights of the husband in the personal property of the wife. In the case of *Crane vs. Gough*, 4 *Md.*, 316, this Court said, "No rule is better established, than that at common law personal property accruing to the wife during coverture, including *choses in action*, vests in the husband."

By operation of the Code, the husband surviving his wife, who dies intestate, leaving children, becomes a tenant for life of her property, real and personal; if she dies intestate without children, he is tenant for life of the realty, and absolute owner of the personalty, if reduced into possession, during his life. It will be observed that the sections of the Article above cited, make no distinction between chattels, personal or real, in possession, and *choses in action;* all are included in the general term "personal property."

Article 45 Code, entitled, "Husband and Wife," makes no provision for the assertion of the husband's rights over the property of deceased wife, as modified by it, in cases of intestacy of the wife, except in the twelfth and last sections, where it said, "a husband bringing an action to recover *in right of his wife,* after her death, may declare, specially setting forth in the usual manner, how the debt or right accrued to his wife, and stating further, that by marriage the debt or right devolved on him." Which is equivalent to the 8th section of sub-ch. 5, of 1798, hereinbefore cited, declaring it shall not be necessary for the husband to take out letters of administration, but all her *choses in action* shall devolve upon him, etc. In Article 93 of the Code, Title—"Testamentary Law," sub-title, Administration, section 32, the 8th section of 1798, sub-chapter 5, is re-enacted in *totidem verbis;* so that it is twice virtually declared in our statute law, that where the intestate is a married woman, it shall not be necessary for her husband to take out administration, but all her *choses in action* shall devolve on her husband, in the same manner as if he had taken out such administration, provided, that if he shall not in his lifetime reduce the *choses in action* into possession, etc., the same shall devolve on her representatives, and administration may be granted accordingly. The apparent inconsistency between the 32nd section of Article 93, and the final clause of the 2nd

section of Article 45, was brought to the attention of this Court in the case of *Stockett, adm'r of Bird vs. Bird's adm'r*, 18 *Md.*, 484. In that case it appeared that Ellen Bird, the wife, died a few hours before her husband, intestate, and without children; the administrator of the husband found a number of notes, payable to Ellen Bird, among the effects of Ellen, and others, among the papers of the husband, but not reduced into possession, or judgments recovered on them by the husband in his lifetime. The question was, whether the *choses in action* belonged to the administrator of the wife, or the administrator of the husband. On the part of the latter it was claimed that under the last clause of the 2nd section of Article 45, they belonged absolutely to the husband, but the Court held that Articles 45 and 93 were to be construed in *pari materia*, that, the general intention expressed in the former Article, was qualified by the particular intention of the latter, which was to be considered as an exception to it, and that the *choses in action* of the wife, not reduced into possession by the husband, etc., did not pass to his administrator, but to the administrator of the wife, for the benefit of her distributees.

In this case, the husband being still in being, has full power to sue for, collect and reduce into possession, all claims held by him in right of his wife.

It is not our province to determine in this case, how far the *choses in action* or personal property devolved on the husband by the laws above cited, are liable to the creditors of the deceased, or what form of remedy, if any, they should pursue.

Finding no error in the order appealed from, the same will be affirmed.

*Order affirmed,*
*with costs.*

(Decided June 25th, 1873.)