ARTHUR J. WILLIS, Administrator of MARY E. JONES, deceased, *vs.* JAMES M. JONES.

*Husband and Wife—Administration upon the estate of a deceased Féme covert whose Husband survives her.*

Where a *féme covert* dies possessed of personal property acquired and held under sec. 1, Art. 45, of the Code, letters of administration cannot be granted upon her estate, unless her surviving husband has validly parted with his rights, or been lawfully deprived of them.

And he will not be treated as having so parted with his rights by having entered into a written agreement for a separation, in contemplation of a divorce, under which, specific articles of personal property were agreed to be held by each respectively, but which contained nothing evidencing an intention on the part of the husband to abandon his rights to all the property his wife might thereafter acquire, and die possessed of, in case there was no divorce.

Nor will the fact that the wife was indebted at the time of her death, give her creditors the right to administer.

Nor is it material that the husband may be insolvent, or may have removed from the State.

APPEAL from the Orphans' Court of Caroline County.

The facts of the case are sufficiently stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STEWART, BOWIE, BRENT, GRASON, MILLER and ROBINSON, J.

*J. W. Bryant* and *Robert J. Jump*, for the appellant.

The Orphans' Court erred in revoking the letters of administration granted to Arthur J. Willis upon the estate of Mary E. Jones, deceased:

1st. Because at the time of the death of Mrs. Mary E. Jones, her husband was a non-resident of the State of Maryland, and so remained until after the granting of administration upon her estate. *Code, Art.* 93, *sec.* 33.

2nd. Because the said James M. Jones had abandoned, and was living separate and apart from his wife at the time of her death. *Code, Art.* 93, *sec.* 31.

3rd. Because the said James M. Jones was insolvent and without administration the creditors were remediless.

4th. Because the said James M. Jones had, by a post-nuptial contract, relinquished his right to the personal property of his deceased wife. *Ward vs. Thompson,* 6 *Gill & Johnson,* 349 ; 2 *Kent's Com.,* 174 ; *Hubbard and Wife vs. Barcus, et al.,* 38 *Md.,* 176.

5th. That an administration upon the estate of Mary E. Jones was a right that her creditors could exercise. *Weisker vs. Lowenthal,* 31 *Md.,* 413.

No counsel appeared for the appellee.

MILLER, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court revoking letters of administration on the personal estate of Mrs. Mary E. Jones, deceased. Mrs. Jones died intestate and leaving children, in April, 1874, and shortly thereafter administration upon her estate was granted to her brother the appellant. In May following, James M. Jones filed his petition praying revocation of these letters on the ground that he was the surviving husband of the deceased, and that the grant of them was contrary to law, and in contravention of his rights in her property. After answer by the administrator the proceedings were made plenary, testimony taken, and upon hearing the Court revoked the letters.

It is quite clear from the proof, that the deceased acquired and held whatever personal property she died

possessed of, under the 1st section of Article 45 of the Code, and by the 2nd section of that Article her surviving husband was entitled to a *life estate* therein.    In *Hubbard & Wife vs. Barcus, et al.*, 38 *Md.*, 175, this Court without determining whether under any circumstances administration can be granted upon the estate of a married woman, dying intestate, whilst her husband survived her, *affirmed* an order *refusing* the grant during the life of the surviving husband, when her property was thus acquired and held. That case is decisive of this unless the husband has validly parted with his rights or been lawfully deprived of them.

But the appellant whilst admitting the marriage and that the parties lived together until shortly before the 15th of February, 1873, contends that at that time there was a formal separation between them, the husband consenting to a decree of divorce on the bill of the wife then pending, and that he then abandoned his marital rights over her and her estate.    In support of this position a written instrument signed by the parties on that day has been produced, and upon the construction and legal effect of that paper, the question whether the husband has surrendered the rights on which he now insists, must be determined.

By that instrument the parties agree to compromise all their troubles on the following terms : the husband agrees to deed or have deeded to the wife, all his rights to her farm and piece of land adjoining, to give her all the furniture in the house with the exceptions hereinafter mentioned, to pay her $300 in cash, and to give her the things out of doors and round about the premises, and to withdraw all suits against her :  She agrees to deed all her right in the house and lot sold to Moore and the house and lot occupied by Dickerman, and to give her husband out of the house, one bed, bedstead and furniture, one bookcase and books, and to withdraw all suits against him and Moore : and each agrees to sign any papers necessary to obtain a divorce when called on ; each to pay their own costs, the

custody of the children for the present to be retained by the wife, and she is to remove from his house in the course of seven days.

This is clearly not an *ante-nuptial* contract like that in *Ward vs. Thompson*, 6 *G. & J.*, 349, where the husband completely relinquished and abandoned his marital rights over his wife's real and personal estate, not only in her favor, but also in favor of "her heirs, executors, administrators or assigns," nor is it a *post-nuptial* agreement to that effect. It is evidently an agreement for a separation in contemplation of a divorce. But it is conceded no decree of divorce was ever passed, and if the law could treat this contract as valid and effective for any purpose, it can only operate to the extent to which the parties intended at the time of its execution. How far it and the subsequent conveyances of the 17th of February, have affected the title to the specific property described in them, or the husband's rights therein, are questions not now before us. This agreement as well as these conveyances profess to deal only with specific articles and pieces of property, and we find in them nothing whatever evidencing an intention on the part of the husband to abandon his rights to all the property his wife might thereafter acquire and die possessed of, in case there was no divorce. To give this agreement that construction would require us to incorporate into it terms and language which the parties have not used, and this we cannot do. It is clearly no abandonment of the rights the husband now asserts.

Nor does the fact that the wife was indebted at the time of her death and indebted to the appellant, give him the right to administer. The same feature existed in the case of *Hubbard and Wife vs. Barcus, et al.*, and we said it was not our province in deciding the propriety of the order appealed from, to determine how far the property devolved on the husband by the Code was liable to the creditors of the deceased, or what form of remedy, if any, they should

pursue. Neither is it material that the husband may be insolvent, or may have removed from the State. The fact that he is the surviving husband of the deceased determines the question presented by this appeal.

*Order affirmed.*

(Decided 3rd June, 1875.)