(Decided 24th June, 1886.)

PETER ENGEL, PETER BAILE, and HENRY BAILE *vs.* STATE OF MARYLAND, use of JOSEPH C. GEIGER.

*Will — Construction — Immediate gift with Bequest over — Vesting of Legacy — Construction of section 2, of Article 45 of the Code — Husband and Wife — Marital rights.*

As a general rule, in the case of an immediate gift with a bequest over in the event of the death of the first or preceding legatee, the event of death is referable to the life-time of the testator. But this construction is only made *ex necessitate rei*, from the absence of any other period to which the words denoting the event of death can be referred. Consequently, where there is another point of time to which such dying may be referred, as where the bequest is to take effect in possession after a life estate, or at any period subsequent to the testator's death, the words may be considered as extending to the event of the legatee dying in the interval between the testator's death and the period of vesting in possession, or the time of actual distribution, as will best promote the intention of the testator, or be gathered from the context of the will.

Where a testator devised certain real estate to his wife for life, with authority to sell the same, one-half of the proceeds to be distributed to the widow, and the other half to be equally divided amongst all his children, share and share alike, " or their share to the children of such as may have died; " and gave certain shares of bank stock to his wife for life, and after her death the same to be divided among his children equally, share and share alike, " including the children of them that may have died," the words " may have died" do not confine the happening of the death of the

Engel, *et al. vs.* State, use of Geiger.

legatee to the life-time of the testator; and his daughter having survived him, but dying in the life-time of the widow, and, as to nearly all of the estate, before distribution made, her child became substituted legatee under the will.

Under section 2, of Article 45 of the Code, where a wife dies intestate, leaving a child surviving, her husband becomes entitled to a life estate only in her property, real and personal, with a statutory reversionary right in the child; and no distinction is made between *choses in action* and *choses in possession*, or other personal property; but the term "personal property," embraces them all, and the husband takes but a life estate in any of them.

APPEAL from the Circuit Court for Carroll County.

David Cassell having died, leaving a last will and testament, which was duly admitted to probate in the Orphans' Court of Carroll County, letters testamentary thereon were granted to Abraham Cassell and Peter Engel, the executors named therein, who qualified as such with Peter Baile and Henry Baile as securities upon their bond. Abraham Cassell, one of the executors died before the filing of the declaration in this suit. The case is further stated in the opinion of the Court. Judgment was rendered for the plaintiff, and the defendants appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, RITCHIE, and BRYAN, J., for the appellee, and submitted on brief for the appellants.

*Charles E. Fink,* and *Charles T. Reifsnider* for the appellants.

*William P. Maulsby,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This is an action on the testamentary bond given by the executors under the will of David Cassell, deceased,

brought to recover certain amounts of distribution of the estate, as shown by the several accounts settled in the Orphans' Court by the executors. The pleadings in the case are very informal and defective, and would not bear the test of a demurrer; but the parties, by agreement, have waived the want of formality and all errors in the pleadings filed, and agreed that the case should be tried as upon a correct and proper state of pleading, so as to allow of the production of any legally admissible evidence to establish the claim sued for, or any legally admissible evidence to establish the defence made by the defendants. The case was tried before the Court without the aid of a jury, and the facts were ascertained and settled by agreement, and set out in the one bill of exception taken by the defendants.

It appears from the statement of facts agreed on, that David Cassell died in Feb., 1861, leaving a will dated the 14th of Jan., 1860, and which was duly admitted to probate. He left a widow surviving him, who died in Nov., 1875; and he also left surviving him eleven children; and at the time of his death he was possessed of a considerable estate, both real and personal. Of the eleven children, one, named Deborah, married Josiah Geiger, in 1862, and died on the 12th of May, 1863, leaving an only child, Joseph C. Geiger, then but a few weeks old, and for whose use this suit is brought. The husband, Josiah Geiger, survived until Jan., 1884; but he became a non-resident of the State soon after the death of his wife, and remained so to the time of his death.

By the will of David Cassell, he devised to his wife his farm, in the Pipe Creek settlement, for her life, provided she was willing to hold it; but if not, she was authorised to sell it, with the assent of the majority of the children,— the sale to be made by the executors; and of the proceeds of sale, the one-half to be distributed to the widow, and the other half to be equally divided amongst all his chil-

dren, share and share alike, "or their share to the children of such *as may have died."* But in the event that his widow should conclude to hold the farm during her life, after her death, he directed that his executors should sell the same, and divide the proceeds amongst all his children, share and share alike (naming them,) "or their share to the children of them that *may have died."* He also gave certain shares of bank stock to his wife for life, and after her death he directed his executors to divide the same among his children equally, share and share alike, "including the children of them that may have died, as before stated." He declared that he desired it understood that all that he had given to his children, in the foregoing part of his will, was "to them, their heirs and assigns." He then directed his executors to collect all moneys due, and to sell the residue of his property, real and personal, in Carroll County, and divide the proceeds, together with the money collected, equally amongst all his children before named, "or their share to the children of them that *may have died,* to them, their heirs or assigns." He also directed his executors to divide all his property in the City of Baltimore equally amongst. his children before named, "their heirs and assigns, or their share to the children of them that *may have died."* It is admitted that all the real estate of the testator was sold prior to the 1st of April, 1876; but whether the farm in the Pipe Creek settlement, devised to the widow for life, with an option to hold the same or to allow it to be sold, was in fact sold before or after the death of the widow, does not appear.

There were six accounts stated in the Orphans' Court by the executors; and, by the 1st, there was but a very small distribution made to Mrs. Geiger, which was paid over to her. All the other accounts were stated, and distributions thereon declared after her death, and very much the larger portion of the estate was distributed after the death of the widow. The last of these accounts was

stated the 27th of October, 1879. No part of the money distributed on any of these accounts was ever paid over to Josiah Geiger, the surviving husband of Deborah Geiger, deceased. The son of Mrs. Geiger, the equitable plaintiff in this case, attained full age before this suit was brought.

For the purpose of showing that the executors had paid out the moneys in their hands, according to the accounts stated and distributions made, in satisfaction of judgments of condemnation rendered in attachment proceedings against Josiah Geiger, as a non-resident debtor, the defendants offered to prove, that, on the 14th of Feb., 1876, Henry Baile, one of the present defendants, sued out an attachment against Josiah Geiger, for the sum of $372.14, and caused the same to be laid in the hands of the executors, the principals in the bond sued on in this case, as garnishees; and that the latter agreed to having a judgment of condemnation entered against them for the amount claimed, and that such judgment was entered accordingly. And the defendants also offered to prove, that, on the 11th of August, 1879, Peter Baile, another of the defendants, issued out an attachment against Josiah Geiger, as a non-resident debtor, for the sum of $754.12, and caused the same to be laid in the hands of the executors as garnishees, and that they agreed to judgment of condemnation, which was accordingly entered. To the admissibility of these judgments of condemnation to affect the rights of the equitable plaintiff, the son of Mrs. Geiger, the plaintiff in this cause objected, and the Court sustained the objection; and this ruling forms the only subject of review on this appeal.

On this state of case, a preliminary question is presented, and that is, whether the equitable plaintiff in this cause acquired the right to the distributions sued for, upon the death of his mother, under and by virtur of the will of his grandfather; or whether the right to such distributions is derived solely through and under his mother, who died intestate.

As a general rule. it is certainly true that in the case of an *immediate* gift, with a bequest over in the event of the death of the first or preceding legatee, the event of death is referable to the life-time of the testator. But it is explicitly laid down as text law that this construction is only made *ex necessitate rei*, from the absence of any other period to which the words denoting the event of death can be referred. Consequently, where there is another point of time to which such dying may be referred, as in the case when the bequest is to take effect in possession after a life estate, or at any period subsequent to the testator's death, the words may be considered as extending to the event of the legatee dying in the interval between the testator's death and the period of vesting in possession, or the time of actual distribution, as will best promote the intention of the testator, to be gathered from the context of the will. 3 *Jarm. on Wills,* 611. Here a large portion, if not much the larger portion, of the testator's estate was not to be divided among his children until after the death of his widow. And in view of the whole context of the will, the question is, to what period do the words "may have died" refer? Do they refer exclusively to the event of the death of the legatee happening in the life-time of the testator? or do they refer to that event as occurring at any period subsequent to the date of the will and before distribution made, or before the death of the widow? If the substitutionary words employed in the will, in connection with the gift to each and all of his children, be taken to refer only to the happening of the death of the legatee in the life-time of the testator, then the daughter, the mother of the equitable plaintiff, having survived the testator, became indefeasibly entitled to her share of her father's estate, and upon her subsequent marriage the marital rights of the husband attached in the property thus vested in the wife. *Dorsey vs. Dorsey,* 9 *Md.,* 40. But, on the other hand, if those words be

taken to refer to any period when the death of the legatee might occur before distribution made, or before the death of the widow, the tenant for life, then the gift to the daughter vested in her upon the death of the testator, subject to be divested upon the happening of her death within the period referred to, and the child became substituted in the place of the mother, as legatee under the will. It is unmistakably clear that the testator intended to substitute the child or children of the legatee who might die, in the place of the parent; and we are of opinion that the words in question do not confine the happening of the death of the legatee to the life-time of the testator; and as the daughter survived her father, but died in the life-time of the widow and as to nearly all of the estate, before distribution made, her child became substituted legatee under the will. The case seems to fall fully within the principle upon which the similar cases of *Hervey vs. McLaughlin,* 1 *Price,* 264, and *Le Jeune vs. Le Jeune,* 2 *Keen,* 701, were decided; and the doctrine of those cases would seem to be founded in the soundest reason and good sense. In both of those cases, upon provisions in wills very analogous to that contained in the will before us, it was held, that the event of death of the preceding legatee was not confined to the life-time of the testator, and that the substituted gift took effect. 3 *Jarm. on Wills,* 612. See also case of *Galland vs. Leonard,* 1 *Sw.* 161.

But the assumption upon which the judgments of condemnation were apparently rendered, and upon which they are sought to be availed of in this case, is, that the daughter, having survived the testator, took an absolute, indefeasible title in the property bequeathed to her by her father's will, and that the marital rights of the husband attached therein, and consequently, upon the death of the wife, the subsequent distributions made from the estate were attachable as property belonging to him for the pay-

ment of his debts. This assumption, however, upon the construction of the will, as we have shown, is wholly without foundation. But even upon the assumption and according to the contention of the defendants, that the wife acquired an absolute, indefeasible title to the property embraced in the gift to her, and that the marital rights of the husband attached, still, the wife dying intestate leaving a child surviving, the husband became entitled to a life estate only in her property, real and personal, with a statutory reversionary right in the child. *Code, Art. 45, sec. 2.* And in this section of the Code, giving the surviving husband a life estate in the property of the wife dying intestate, no distinction is made between *choses in action* and *choses in possession,* or other personal property; but the term *personal property* embraces them all, and the husband takes but a life estate in any of them. *Hubbard and Wife vs. Barcus,* 38 *Md.,* 175. It is true, the statute provides that all the *choses in action* of a deceased wife shall devolve upon the surviving husband, *in the same manner as if he had taken out letters of administration upon her estate*; but when such *choses in action* are reduced to possession, if the wife died intestate, leaving child or children surviving, the husband has nothing more than a life estate therein. The thing itself or its equivalent, subject to the use and enjoyment of the life tenant, must be preserved and protected for the benefit of the party entitled in reversion. Whether the creditors of the husband may have a right, and if so by what means or process, to subject the interest of the surviving husband to the payment of his debts, this case does not require us to decide. But it is very clear that the interest or property in reversion belonging to the surviving child of the mother, whether in the form of *choses in action,* or otherwise, cannot be taken for the surviving husband's debts. The judgments of condemnation, therefore, offered in evidence as a discharge *pro tanto* of the distributions

sued for, were properly excluded. Those judgments were not adjudications against the equitable plaintiff in this case, and do not profess to affect his rights, and not being a party to those judgments, nor claiming under or in privity with the defendants therein, he cannot in any manner be affected thereby. *Bull. N. P.*, 232; 2 *Tayl. Ev.*, p. 1450, sec. 1505; *Life Ins. Co. vs. Tisdale*, 91 *U. S.*, 244; *Humes vs. Scruggs*, 94 *Id.*, 25. The judgment will be affirmed.

