(Decided 18th November, 1887.)

## CHANCELLOR BAILEY *vs.* THOMAS S. LOVE. SAME *vs.* SAME.

*Will— Vested Estate in Remainder—Life Estate.*

L. died in 1872, leaving a will. The testator after disposing of a part of his property, gave all the rest and residue of his estate to two persons in trust, to divide the same into two equal parts, one part to be held in trust for certain persons, the other one-half of the said rest and residue he gave to his executors, in trust to pay to his aunt during her natural life the annual sum of $600, in semi-annual payments, and the balance of the income to distribute among her children and their heirs, share and share alike; and from and after her death, to distribute the whole of the said net income among the children, during their natural lives, respectively, and from and after the death of any child of his said aunt, he gave the share of such child, to the child or children of such deceased child absolutely; but if any of the children of his said aunt should die without issue or descendants, he gave the part or portion to which the person so dying was entitled, to the Baltimore Asylum for the Blind. The aunt had daughters, one of whom Mrs. Bailey, had two children, a son, Chancellor Bailey, and a daughter, Mrs. Love. The latter died in the life-time of her mother, intestate and without issue. Upon the death of Mrs. Bailey, the husband of Mrs. Love filed a petition for a division of the property that Mrs. Bailey was supposed to have under the will, and claimed that, as his wife had died intestate and without issue, he was entitled, as surviving husband, to the one-half of the estate. Chancellor Bailey denied this right and claimed the whole. HELD :

That Mrs. Bailey was not entitled to a vested estate in remainder under the will, but was only entitled to a life estate; and that on her death, Chancellor Bailey, her then only surviving child, took the whole share she would represent.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, IRVING, and BRYAN, J.

*St. George R. Fitzhugh, Edward Otis Hinkley,* and * *John G. Mason,* for the appellant.

The rule of implication of cross-remainders, from a gift over upon default of issue, is one derived from the cardinal rule that the intention shall prevail; it being considered just to suppose that, if a testator gives an estate over upon default of issue, he intends that none but issue shall take. *Goldsborough's Lessee vs. Hawkins,* 1 *H. & McH.,* 157.

It is very evident that the testator intended, so far as the income is concerned, to give it only to the descendants of any deceased child of his aunt, for he says expressly: "the descendants of any deceased child of my said aunt to take the share or shares to which their or its parent would have been entitled."

It is fair to conclude that this intention runs through the whole clause. After the death of the aunt, the whole income indeed was to be distributed; but the intention that none but a descendant of a cousin should take is clearly shown, as well from the mode of distribution during the aunt's life, as from the circumstances of the gift over, if any one of the cousins of the testator should die without issue, or *descendants of such issue.* This would be tauto-

* Mr. Mason, although present, took no part in the argument.

logical, except upon one construction, namely, the testator meant the word issue to be children.

This case is clearly distinguishable from the case of *Fenby vs. Johnson*, 21 *Md.*, 106.

Here is no gift to two in fee, and then upon the death of both over; but a gift of a share of the income in the hands of the trustee to a cousin of the testator, and then a gift from and after the death of such cousin to the child or children of such cousin.

Now, evidently from what goes before, the descendants of any deceased cousin were to take and none other; so that, when the share was ascertained, which could only be by the trustee himself in pursuance of the power of sale given to him, the point of time when it must be done as to any share, being the death of a cousin—the gift takes effect to those to whom the trustees are then to distribute it.

It has often been held, that where a division or distribution is to be made, the persons answering the description at that time are to take. Clearly the testator intended the whole income of the half part of his estate to be collected together and distributed. The *corpus* of the estate is not given to any child of a cousin until the death of such cousin; and if the aunt, Anne Chancellor, had survived Georgia Love, it is clear that Georgia Love's descendants only could have taken. But she had none, and so her husband never could have taken anything.

Why, then, should the construction be changed by the accident of the death of Anne Chancellor? The gift before the testator to the children of the cousin is certainly not in any way dependent on the aunt's death, except as to her $600 a year. The testator did not intend any one but a descendant of a cousin to take in any event. It is a question of intention of the testator upon the whole clause of gift to this branch of his relatives. *Moon vs. Stone*, 19 *Grattan*, 327; *Waite vs. Littlewood*, *L. R.*, 8 *Ch. App.*,

Bailey *vs.* Love.

70; *Mackall vs. Winter,* 3 *Vesey,* 544; *Wadley vs. North,* 3 *Vesey,* 364; *Leake vs. Robinson,* 2 *Merivale,* 384; *Spencer vs. Wilson, L. R.,* 16 *Equity Cases,* 601; *Vawdry vs. Geddes,* 1 *Russ. & My.,* 203; *Leeming vs. Sherrat,* 2 *Hare,* 15; *Re Cartledge,* 29 *Beav.,* 583; *Emerson vs. Cutler,* 14 *Pick.,* 108; *Dingley vs. Dingley,* 5 *Mass.,* 537; *Olney vs. Hull,* 21 *Pick.,* 311; *Travis vs. Morrison,* 28 *Ala.,* 498.

*Thomas Hughes,* and *Charles Marshall,* for the appellee.

The appellant, Bailey, admits that the remainder in Mrs. Love was a vested remainder, but contends that the devise over to the Blind Asylum, in the event Margaret L. Bailey died without issue, created a cross-remainder, *by implication,* as among Mrs. Bailey's children. There is no doubt the remainder was vested in Mrs. Love, her heirs and assigns. *Mosher vs. Tayloe,* 29 *Md.,* 443; *Meyer vs. Eisler,* 29 *Md.,* 28; *Kemp vs. Bradford,* 61 *Md.,* 330; *Engel vs. State, &c.,* 65 *Md.,* 539.

It was a vested remainder in a defeasible estate capable of being defeated in the single contingency of Mrs. Bailey dying without issue thereby vesting the estate in the Blind Asylum, in favor of which there was a contingent remainder, contingent upon this event, of Mrs. Bailey dying without issue. But how could this contingent remainder to the asylum create a cross remainder by implication among Mrs. Bailey's children? An estate by implication arises when an estate provided for is created in words that necessarily presuppose the existence of some other estate, which thereby is said to exist by implication, as, for instance, devise to Mrs. Bailey for life, remainder, if she dies without issue, to the Blind Asylum, an estate may be said to exist by implication in favor of Mrs. Bailey's issue. But here an estate is not left to *implication* but is *expressed* to be after Mrs. Bailey's life for her children, their heirs and assigns, and only in the event she dies absolutely without issue is the Blind Asylum to

take. This is a contingency intended by the will to have exclusive reference to the estate of the Blind Asylum in determining the contingency upon which it is to take and has no reference to the estate of the children.

The case of *Fenby vs. Johnson*, 21 *Md.*, 117, is conclusive of this case in every respect. In that case which is analagous to this, no cross remainder arose, and it was said that in case of a gift to several in fee as tenants in common, with a limitation over in case they *all* die under age, the share of one of the devisees dying during minority will devolve upon his representatives, *unless* and *until* the whole die under age.

IRVING, J., delivered the opinion of the Court.

The questions arising on these appeals depend for their decision upon the proper construction to be given to the residuary clause of the will of Alexander Lorman who died in 1872. The testator gave "all the rest and residue" of his estate to two persons in trust, to divide the same into two equal parts, and then to hold one part in trust for certain persons who are not concerned in this appeal, and in certain contingencies to pay the same to the "trustees of the Baltimore Asylum for the Blind." Then follows this language: "The other one-half of the said rest and residue of my estate I give, devise and bequeath to my executor, Edward Roberts and to Major Sandford Chancellor, of Spottsylvania County, Virginia, residing at ' Forest Hill,' and to the survivor of them, and the executors and administrators of such survivor, in trust and confidence nevertheless, that is to say : In trust that they, the said trustees collect and receive the rents, profits and income thereof, and after paying all taxes, ground rents and repairs accruing from time to time, to pay my aunt, Anne Chancellor, widow of the late George Chancellor, of Chancellorsville, Spottsylvania County, Virginia, the amount and annual sum of six hundred dollars, in

semi-annual payments, for and during her natural life, and the balance to distribute among the children of my said aunt, and their heirs share and share alike; the descendants of any deceased child of my said aunt to take the share or shares to which their or its parent would have been entitled; and from and after the death of my said aunt to distribute the whole of the said net income among the children for and during their natural lives respectively, and from and after the death of any child of my said aunt, then I give and bequeath the share to which such child was entitled, to the child or children of such deceased child, their heirs and assigns absolutely; but if it should so happen that any or all of my said cousins, the children of my said aunt, should die without issue, or descendants of such issue, then I direct and desire that the part or portion of my estate to which the one so dying was entitled to be paid over to the trustees of the Baltimore Asylum for the Blind, heretofore mentioned.

"And I hereby authorize and empower my said trustees and the survivor of them, and their successors, in case they shall be of opinion at any time that it is necessary, for the purpose of making a division of the said part among those entitled under this my will, or in case they shall deem it necessary or advantageous to the parties interested in the same, to sell the whole or any part of my estate real, personal or mixed, as to them shall seem most beneficial to the parties interested; the trusts and devises however, or rights of the parties in relation to my estate or property so sold not to be changed thereby; but the proceeds of any such sales are to be held by my said trustees and their successors in trust, in the same manner in all respects, and to the same extent as they are heretofore in this my will directed to hold the estate or property sold. And I also authorize and empower the trustees and their successors to invest the proceeds of such sales, or any other money which may come into their

possession under this my will in such secure and productive manner, either in ground rents or other real estate, stocks or funds, or loaned out on mortgage, as the said trustees or their successors may deem most beneficial and advantageous—any investment may be changed from time to time by the said trustees and their successors—and such estate, property, stocks, funds, so acquired, may be sold, transferred and assigned from time to time, and the proceeds thereof re-invested as my said trustees or their successors may see fit and proper; but all the estate, property, stocks, funds, or other debts acquired or created by any such investment or re-investment, shall be held by the said trustees and their successors in trust at all times, in the same manner in all respects, and to the same extent as they are hereinbefore in this my will directed to hold the original estate, property, money, or funds so invested, and to be subject to all the trusts, limitations, conditions and restrictions in every respect, and to the same extent, and shall be held and go in the same manner as in this will heretofore mentioned."

The facts which give rise to the controversy are as follows: Margaret L. Bailey was one of the daughters of Anne Chancellor, to whom the will gives the annuity of six hundred dollars. Mrs. Bailey had two children, Chancellor Bailey, the appellant, and Mrs. Love, the wife of the appellee. Mrs. Love died in the life-time of her mother. Upon the death of Mrs. Bailey, Thomas S. Love filed a petition for a division of the property that Mrs. Bailey was supposed to have under the will, and claimed that as his wife had died intestate, and without issue he was entitled as surviving husband to the one-half of the estate. Chancellor Bailey denied this right in his answer and claimed the whole. The question turns upon whether there was a vested remainder under the will in the children of Margaret L. Bailey, so that Mrs. Love's right was not dependent upon her surviving her mother. The Court

below decided that the remainder was vested and awarded Love one-half the estate in right of his wife. From that decree appeal was taken.

In the construction of wills "the intention is certainly the object of ascertainment in every case." If that can be ascertained it is to "be implicitly obeyed;" unless some settled and fixed rule of law and construction prevents. Where the intention cannot be reached with reasonable certainty and there is doubt and difficulty, it will be solved by the application of some rule of established authority. The law certainly favors the vesting of estates. This Court in *Tayloe vs. Mosher, et al.,* 29 *Md.,* 444, distinctly so declares; but still, whether the testator intended to give a vested estate, or to make it to depend upon a future contingency, depends upon what he says, and if that with reasonable clearness indicates a desire that it shall not vest, the intention must control; and this Court said most truly in *Tayloe's Case,* "that each will must depend for its construction, in great measure upon its own peculiar language, phraseology and circumstances." Inasmuch as every will must be construed by itself, decisions in other will cases can only assist by showing how principles have been applied in cases somewhat analogous. The case of *Tayloe vs. Mosher,* 29 *Md.,* unquestionably announced the law correctly, and properly solved the doubt arising in that case by holding the estate involved to be a vested estate. But that case is not conclusive of this as has been insisted by the counsel for the appellee. It is not exactly analogous to this. That case decided that an estate would be held to be vested when it could be done without doing violence to the language of the will or the plainly indicated intent of the testator. In that case the question arose because of the future period named for distribution of the estate. There was no limitation over in the event of certain future contingencies, as there is in this case; which in our opinion makes the intention of the testator transparent.

After making a number of bequests absolutely to friends and a maternal cousin, he directs certain trustees whom he names, to divide the residue of the estate into two equal parts, and creates a trust for the management of each, and the payment of the income to certain persons, and in certain contingencies directing that the estate shall go to the "Baltimore Asylum for the Blind." The evident purpose of the testator was to provide first for certain persons who were blood-kin to him, and upon failure of issue of any of those persons that the Blind Asylum should take the share of such person so dying without issue or descendants. It was certainly the purpose of the testator, clearly indicated by his will, that the Blind Asylum in certain events which he names, should be the recipient of his bounty; and no construction ought to be given the will which entirely defeats that desire and manifested intention, unless some imperative rule of law or construction requires it. In this case we think it is plain from the language used what the testator intended, and the language is not such as necessarily to create a vested estate. The words of futurity employed are not such "as point merely to deferred possession or enjoyment." The rule favoring the vesting of estates was adopted, this Court says, to prevent possible intestacy. *Tayloe's Case*, 29 *Md.*, 351. Where the provision is being made in a will for children, Courts enforce the rule with more strictness and readiness, than where the provision is made for collaterals; because in the one case it is regarded as "a debt of nature," and in the other, as to collaterals, "it is a mere bounty only." Lord Hardwicke in *Billingsley vs. Wills*, 3 *Atk.*, 222. This case of *Billingsley vs. Wills*, is much more analogous to the case now under consideration than that of *Tayloe vs. Mosher* already cited. In *Billingsley's Case* the interest only, of fifteen hundred pounds, was bequeathed to the testator's brother for life, "*then from and after* the decease of my brother, I give

the said sum of fifteen hundred pounds unto and amongst all and every the younger son and sons, in case there be any younger sons, and all and every the daughter and daughters of my brother Capel Billingsley now lawfully begotten, or to be begotten, share and share alike ; but in case he shall have only daughters lawfully begotten, then only unto and amongst the younger daughter or daughters, and to be paid to them, all, every and each of them, at and when they shall have attained to their respective ages of one and twenty years." " But in case all the children of my said brother Capel Billingsley except one, either son or daughter, shall happen to die before their respective ages of twenty-one, then I give one thousand pounds, part of the fifteen hundred pounds, to such surviving only child, whether son or daughter, and to be paid to him or her at their age of twenty-one years." Capel Billingsley had three children, a son and two daughters at the time that will was made, and one son born after the testator's death. Laetitia, one of Capel Billingsley's daughters attained the age of twenty-one years and died before her father. After he died the husband of Laetitia claimed as her representative, a share of the fifteen hundred pounds. The question was there, as here, dependent on whether there was a vested interest in the wife under that will. It was decided the interest was not a vested one, and that Laetitia's husband was not entitled. Lord HARDWICKE laid great stress on the fact, that the interest of the fund only was given in the first place to the testator's brother, Capel Billingsley, and that the fund, the fifteen hundred pounds, was given *from and after the death* of Capel Billingsley. If nothing had been said of the *interest,* and the bequest had begun with the language from and after his brother's death, then he thought the legacy would have been vested. But he said it was plain from the language used, that the children took no interest in the fifteen hundred pounds till after the death of the father, and that both as to vesting

and payment it took place then.   It was not to be paid until the children reached twenty-one, if they survived their father.

The words "from and after" the death of the annuitant were held here, as in *Tayloe's Case*, not necessarily to prevent vesting, but from their connection, and what had preceded, to indicate the purpose of the testator that the legacy should not vest until after the death of Capel Billingsley, the annuitant.

The same words, "from and after the death of my said aunt," in Mr. Lorman's will, and "from and after the death of any child, then I give the share to which such child was entitled, to the child or children of such child," with great distinctness and force indicate that no vested estate in the legacy or bequest was given, or intended to be given, until after the death of Anne Chancellor, and any child of Anne Chancellor.

The testator gives six hundred dollars a year to his cousin, Anne Chancellor; the residue of the income, of that half of the residue of his estate with which we are dealing, was distributed among the children of Anne Chancellor.   If one of those children died the *descendants of such child* was to take the parent's share of these revenues.   *After the death of the aunt* the will directs the distribution of the whole income of the estate among *her children during* their *natural lives respectively.*   The children of Anne Chancellor therefore were to get no part of the *corpus* of the fund during their lives—the interest only was given to them.   "From and after the death of any child of my aunt, then I give and bequeath the share to which such deceased child was entitled, to the child or children of such deceased child, their heirs and assigns absolutely."   No child of Mrs. Chancellor was to enjoy the *corpus,* but the grandchildren only were to do that, if they survived their parents.   The grandchildren are given that "absolutely," to their heirs and assigns; but if they did

not survive their parents or left no issue, the estate was to go over. No transmissible estate was before given. The language is, "But if it should so happen that any one or all of my said cousins, the children of my said aunt should die without issue or descendants of such issue, then I direct, &c." Here was the contingency in which the " Blind Asylum" was to be his beneficiary. Evidently he was providing for his own blood-kin, and wanted to keep his property in their hands; but on failure of such blood-kin, he wanted the Blind Asylum to have it. To make sure of this wish being realized, he fails to use any language which gives his first cousin or his second cousins any present interest in the *corpus* of the estate. He gives his second cousins, as he gives his first cousin Anne Chancellor, only the income during life; and then when they die if they leave descendants, such descendants are to take it, and if there are no such descendants, then another object of his bounty was to have the fund. The will should be construed so as to make all its provisions effective if possible. We are all of opinion that the testator's meaning, as indicated by the language he has chosen to express himself, was as we have above stated it to be. Being so satisfied we cannot hold that the law favors the vesting of estates to the extent of defeating the testator's intention. *Travis vs. Morrison,* 28 *Alabama,* 498. The doctrine laid down and applied in *Tayloe vs. Mosher,* 29 *Md.,* does not so require. On the contrary, that case establishes that every will must be judged of by its own " language, terms and phraseology." Our conclusion is, that Mrs. Bailey was not entitled to a vested estate in remainder, under the will, but was only entitled to a life estate, and that on her death Chancellor Bailey, her then only surviving child, took the whole share which she would represent. It follows that the decree of the Circuit Court from which appeal was taken must be reversed.

Inasmuch as this decision gives the appellant, Chancellor Bailey, the whole fund and estate involved in this controversy, the main question intended to be raised by the second appeal contained in this record, becomes unimportant. The petition, the dismissal of which is complained of in this appeal, asked for a modification of the decree to the extent of excluding from its operation, so far as appellee Love was concerned, certain amounts forming part of the fund alleged to be the proceeds of real estate sold and re-invested, and which the petition claimed retained under the provisions of the will, its distinctive character as real estate, and would not descend from Mrs. Love to her husband, even if she took a part of the estate. By the dismissal of that petition with costs, the appellant was injured and the decree which we reverse was upheld. Under our view the appellant takes the whole estate, and the question presented by the petition is immaterial and need not be considered. The order dismissing that petition will therefore simply be reversed, without further consideration of the question presented by it. Both decrees or decretal orders from which appeal has been taken, will be reversed; and the petition of the appellee for a distribution of the estate must be dismissed. The costs of these appeals will be paid from the fund.

*Decrees reversed, and*
*appellee's petition dismissed.*

(Decided 18th November, 1887.)