# CIRCUIT COURT OF BALTIMORE CITY

Filed June 29, 1889.

### REBECCA BARRON ET AL.
### VS.
### FANNY RICH ET AL.

*E. N. Rich* for plaintiffs.

*Daniel M. Thomas, R. G. Keene, John H. Keene, Jr.,* and *W. S. Bryan, Jr.,* for defendants.

WRIGHT, J.—

This is a petition filed for the construction of the residuary clause of the will of Jacob Myers and also of a deed executed by the said Myers; and the only interests before the Court are those of Rebecca A. Miller (afterwards Barron) and her descendants. The question involved in the construction both of the will and deed seem to me to be the same, and I shall consider them as meaning the same thing and having the same effect.

The residuary clause of the will provides that all the residue of Jacob Myers' estate shall be divided into ten equal parts which are disposed of as follows: three-tenths are given directly to the testator's three sons, and the remaining seven-tenths are given to his seven daughters (to each one-tenth), as follows: "Ten thousand dollars out of each one of the remaining seven-tenths (making together the sum of seventy thousand dollars) in stocks or in cash, to be vested in real estate or stocks, or placed out on interest upon good mortgage or other safe security, at the discretion of my daughters, Mary Williams, Louisa Webb, Sarah Inloes, Sophia Pierce, Julian Cole, Rebecca A. Myers (afterwards Rebecca A. Miller and Rebecca A. Barron), and Emily Augusta Myers, respectively. I give, devise and bequeath unto my son, Samuel T. Myers, above named, and my sons-in-law, James Williams and Joshua Inloes, and the survivor or the survivors of them, and the heirs, executors, and administrators of the survivors, in special trust and confidence nevertheless, and to, for and upon the uses and trusts, and to the ends, intents and purposes hereinafter mentioned, expressed, limited and declared of and concerning the same, that is to say: In trust, that each one of my seven daughters (naming them) "respectively be permitted and suffered during their natural lives respectively to have, hold, use, possess and enjoy one of the said sums of ten thousand dollars or the stocks and property in which the same may be vested, and the income, issues, profits and interest thereof to receive, &c., to their sole and separate use and benefit respectively, without being subject to the control, power or disposal of their respective husbands, or liable for the payment of their debts, or bound for the fulfillment of their contracts or engagements, &c.; and from and immediately after the decease of my said seven daughters respectively, then, in trust that one of said sums of ten thousand dollars, or the stocks and property in which the same may be vested, shall descend to and become the property of their child or children respectively, his, her or their executors, administrators and assigns absolutely, if more than one, as tenants in common, to be equally divided between them, share and share alike; the issue of any deceased child of my said seven daughters, respectively, if any such issue there should be, to have and take the part or share the parent of such issue respectively would, if living, be entitled to, and in the event of the decease of any of the children of any of my seven daughters respectively under age and without issue, the part or share of him, her or them so dying shall descend to his, her or their surviving brother or brothers and sister or sisters." In the deed it is provided that in case Rebecca should die without leaving a child or descendants living at her decease, or if having a child or descendants living at her decease, or if having a child or children they should die under lawful age and without issue, then over to the right heirs of Jacob Myers. In the will it is provided under like circumstances that the property shall become the property of the testator's surviving children, without,

however, mentioning anything concerning the death of child or children under age.

The facts are as follows: Mrs. Barron (formerly Rebecca A. Myers and Rebecca A. Miller), the equitable life tenant, died on the 6th of December, 1888. She had four children, namely: (1) Fanny K. Rich, the wife of Arthur J. Rich. (2) Virginia Rich, the wife of Edward Rich; Mrs. Fanny K. and Mrs. Virginia Rich are still living. There were two other children. (3) Louisa K. Larmour, who married John W. Larmour in 1867 and died a short time afterwards intestate and without issue, but over age, and (4) Albert W. Barron, who died in 1884, leaving a widow and one son, Edward M. Barron, an infant, surviving him. Mrs. Barron (Rebecca A. Miller) was during her lifetime entitled to the enjoyment of the trust funds, and the question is as to who are now entitled to them, she being dead. There were several codicils to the will, but I do not think that under the decision in Fairfax vs. Brown, 60 Md. 53, this has the effect in this case of changing the provisions and limitations of the will, so far as the questions now before the Court are concerned. As regards the ownership of the interest to which Albert W. Barron would have been entitled had he survived his mother, Rebecca A. Barron, I have no doubt that his son, Edward W. Barron, is now entitled; whether the interest of Albert W. Barron was a vested or contingent one, the same result would follow; if vested, it was defeasible upon his death, leaving a child, and became vested in that child; and, if contingent, the interest became a vested one in Edward on the death of his grandmother. The main and difficult question arises in regard to who is now entitled to the interest that would have belonged to Mrs. Larmour, had she survived her mother, the equitable life owner. When, by this clause of Mr. Myers' will (and in speaking of the will, I intended also to include the deed as being substantially the same), was the interest of the children of Mrs. Barron to vest?

On the one hand it is contended by Mr. Larmour that these children had vested estates in remainder in the fund set apart by the deed from the time of the creation of the trust, or as soon thereafter as they were born, and

in the fund set apart in the will from the death of the testator, or their birth thereafter, and that consequently, Mrs. Larmour having reached full age and died intestate and without issue, her share devolved on her surviving husband, Mr. Larmour.

On the other hand it is contended that none of the interests in remainder vested until the death of Mrs. Barron, and that as at that time Mrs. Larmour was not alive, she never had any vested interest in the estate, and her surviving husband is entitled to no portion thereof. On both sides the question has been most earnestly and ably discussed, the counsel for Mr. Larmour relying most strongly on a line of English authorities, and the counsel for Mrs. Fanny K. and Mrs. Virginia Rich contending that the weight of recent Maryland authority is overwhelmingly in favor of the construction urged by them.

I must say that I should have had little difficulty in deciding this point, had there not been so many seemingly contradictory decisions in cases of wills, hardly distinguishable in their main features from the clause now before the Court. I should have had little difficulty, taking the language of the entire clause of the will and the deed, in saying that there was in both a clearly defined general intent on the part of the testator and grantor to keep this property in the line of his own blood as long as he could, and that, therefore, he had no intention whatsoever that the title should vest in his grandchildren before the death of his daughter Rebecca; when by such vesting a husband of one of the grandchildren should be placed on a more favorable footing than the husbands of her mother or her aunts, for some of whom a most kindly feeling is shown by the fact of their having been appointed trustees. Then, the language used in regard to the time when the children of his deceased daughters were to become entitled, evidently, to my mind, shows that the testator's intention was that only those children who survived their mother, the life tenant or owner, or children of those who may have died, should become entitled to his property. "And from and immediately after the decease of my said seven daughters, respectively, then in trust" that said property "shall descend to and become equally divided

among them" (evidently requiring some active duty in the division to be then at that specific time performed by the trustees) and "the issue of any deceased child of my said seven daughters to have and take the part or share the parent of such issue respectively "would, if living, be entitled to," and in the event of the decease of any of the children of my seven daughters "respectively, under age and without issue, the part of him, her or their surviving brother or brothers, sister or sisters." The words "under age and without issue" from the connection, I should undoubtedly have considered as meaning "dying under age and without issue after the death of their mother."

The authorities cited by the counsel for Mr. Larmour made me hesitate and doubt whether I should not be compelled to give Mr. Larmour's interest to her husband although as stated, I did not think that such action was at all in accordance with the line of intention of the testator. I have examined the numerous authorities cited by the respective counsel and can only give the conclusion I have reached without attempting to comment at length on the cases.

I stated at the hearing that I thought the question should be decided by the Md. cases; and taking the more recent cases, and following their evident tendency, I have come to the conclusion that the title to the property in dispute did not vest until the death of the life tenant, and that, therefore, only those who were then alive, and could then fulfil the conditions, would become entitled. There are, undoubtedly, many strong English authorities to a contrary conclusion, but I think that I can perceive a line of demarcation between those authorities and the Md. authorities since the decision of Engel vs. State, 65 Md. 544.

Let us take for instance the case of Martin vs. Holgate (1 H. L. L. R. 186), strongly relied on by the counsel for Mr. Larmour. Now, although the language of the will in Martin vs. Holgate may be distinguishable from that used in the will now before the Court, still the reasoning and the grounds of decision show, I think, that our Court of Appeals has exhibited a much more liberal spirit in the application of some of the rules of construction, than have the Courts of England, and have also shown a stronger desire to compel those rules to bend to the intention, rather than to make the intention give way for the rules. In that case, the Lord Chancellor, after stating that the authorities were conflicting as to the vestry of estates, admits that it is a rule of construction that we should, if possible, give effect to every word, and in applying this rule he states the case in so strong a manner that I can hardly doubt, that under our own decisions, I should be bound to say that there was shown a reasonable certainty of the intention of the testator, and that I should have felt compelled—following our decisions—to have decided exactly contrary to the decision reached by him. His Lordship, however, goes on to say: "But the rule of construction to which I have referred is by no means an inflexible one, and it is here encountered by another rule, namely, that we are never to construe a gift as contingent unless the context requires us to do so; and it is very difficult in this case to say that there is any such necessity." And after having stated a case which strongly shows that by construing all the words the intention of the testator was shown with reasonable certainty, by a rigorous application of the last mentioned rule, he overthrows the intention thus ascertained. With due submission, and with extreme diffidence, I would venture to say that our Court of Appeals would not have thus reasoned. This is, I think, clearly shown in Baily vs. Love, 67 Md. 599, where the Court says: "In the construction of wills 'the intention is certainly the object of ascertainment in every case.' If that can be ascertained it is to 'be implicitly obeyed,' unless some settled and fixed rule of law and construction prevents. Where the intention cannot be reached with reasonable certainty, and there is doubt and difficulty, it will be solved by the application of some rule of established authority." It is, therefore, where there is no reasonable certainty—not a certainty beyond a possibility of a doubt—that such rules will be used for the solution of the question; and where the application of such rules would produce a result which it would be contrary to common sense for a moment to believe was ever intended by the testator, I think the cases show that our Court would now decline to apply such rules. In other words, I think it evident that under the line of

authorities, since Engel vs. State, use of Geiger, our Court of Appeals would apply most strongly the rule that every word in the instrument should be construed, and only when it could not by such construction arrive at a "reasonable certainty" of the intention of the testator, would it apply the rule requiring the vesting of estates. In Baily vs. Love, 67 Md., p. 603, the Court says: "We are all of opinion that the testator's meaning, as indicated by the language in which he has chosen to express himself, was as we have above stated. Being so satisfied, we cannot hold that the law favors the vesting of estates to the extent of defeating the testator's intention. The doctrine laid down and applied in Taylor vs. Mosher (29 Md.) does not so require. On the contrary, that case establishes that every will must be judged by its own language, terms and phraseology." In Straus vs. Rost, 67 Md. 465, the testator gave all his property to his wife for life, or so long as she remained his widow. In the event of her marriage he gave her only what the law allowed, and the will continued, "And the residue of my estate I give, devise and bequeath *absolutely* to all my children, to be equally divided between them, share and share alike, the issue or descendants of any deceased child or children, to take, *per stirpes* and not *per capita*, the share such child or children would have respectively taken had such child or children survived." The Court in that case went very fully into the question, and approved (as it had before approved in Engel vs. State, use of Geiger, 65 Md.), the rule laid down in 3 Jarman on Wills, 611. "But although in case of an immediate gift it is generally true that a bequest over in the event of the death of the preceding legatee refers to that event occurring in the life time of the testator, yet the construction is only made *ex necessitate rei* from the absence of any other period to which the words can be referred, as the testator is not supposed to contemplate the event of himself surviving the object of his bounty; and consequently where there is another point of time to which such dying may be referred (as obviously in the case where the bequest is to take effect 'in possession' at a period subsequent to the testator's decease) the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of 'vesting in possession'." The Court further says: "The testator has, in our opinion, indicated with 'reasonable certainty' the time at which he wished the residue of his estate to 'vest,' and that was upon the second marriage, or death of his widow." It can hardly be contended that the language used in the will in Strauss vs. Rost showed with any more "reasonably certainty" when the estate was to vest, than does the language in the deed and will now before the Court. Strike out of the former the words relating to the marriage of the widow, and the plain language of the Court is that the testator intended the estate to vest at the time of the death of the widow, and applying this to the language used in the instruments now before the Court, very similar to that in Strauss vs. Rost in the material points, I am forced to the conclusion that the testator intended the estate to vest at the death of his daughter Rebecca. The case of Thompson vs. Ballard, decided by the Court of Appeals, January 9th, 1889, at first view seemed to me to throw some doubt on the views hereinbefore expressed, but the comments of counsel for Mr. Rich on and their able analysis of that case, and a more careful reading of the opinion, have satisfied me that the Court did not intend, by that decision, to change the current of decisions as shown in the cases heretofore cited. I will, therefore, sign a decree embodying the views above set forth.