## CORA LEE LUMPKIN *vs.* HANNAH S. LUMPKIN ET AL.

*Bill for Partition of Property and Construction of a Will—Necessary
Parties—Knowledge of Equity Proceeding by Party in Interest not
Summoned—Petition to Vacate Decree and Bill of Review—Devise
to one Person with Limitations Over Upon Death Without Issue—
Death of Devisee Without Issue After Testator—Decree not Dis-
posing of Whole Matter in Controversy.*

The wife of a devisee and legatee under a will is a necessary party to a
bill in equity asking for a construction of the will, when her marital
rights would be affected by the decree made in the case.

The fact that a woman whose husband is a party to an equity cause in which
his father's will was construed, hears the proceedings discussed by the
family when on a visit to them from another State where she resided,
does not operate to bind her by the decree, upon the ground that, hav

ing knowledge of the suit, she failed to appear therein and assert her rights.

Under a bill in equity for the construction of a will which disposes of personalty as well as real estate, the executors are necessary parties.

A decree which does not pass upon the whole subject matter and object of the suit, and determine the rights of the parties with reference thereto, is erroneous.

A bill was filed by the children of a testator for a partition of the real estate devised to them by the will and for a construction of the same. The wife of W. W., one of the children and beneficiaries under the will who was a non-resident, was not made a party to the proceeding. Afterwards her name was added by interlineation, but no process was served on her, and she never appeared by counsel. The decree made in the cause partitioned the real estate and directed that the share of each child should, according to the Court's construction of the will, be defeasible upon his subsequent death without issue. The decree made no provision for the disposition of certain property, devised to the testator's widow for life, upon the expiration of her life estate, and did not refer to the personal property which passed under the will, and the executors were not made parties to the cause. After the death of W. W., and after the enrollment of the decree, his widow, who was his executrix and sole devisee and legatee, filed a petition to vacate the decree, and for a re-hearing of the cause as to the construction of the testator's will, and also a bill of review against all the parties to the original bill. *Held*, that the widow was entitled to file the petition and bill of review, since the original proceedings were defective for want of necessary parties and because the final decree did not dispose of the whole subject-matter, and because that decree destroyed her marital rights in her husband's share of the testator's property without giving her an opportunity to be heard.

In the absence of an apparent intention of the testator to the contrary the general rule is that when property devised to one with a limitation over in the event of his death, uncoupled with any contingency, the devise is construed to mean a death of the devisee in the lifetime of the testator.

When there is an absolute gift by will to A and it is provided that if he should die without leaving issue the property shall go to B, then, if A survives the testator, he takes the property absolutely, and his estate is not divested by his subsequent death without issue, unless the context of the will indicates an intention of the testator to the contrary.

By the first item of his will, a testator gave to his widow four-tenths of his entire estate for life, including certain designated ground rents, and provided that at her death, "these ground rents are to be equally divided between my children or their children share and share alike." By the second, third, fourth, fifth and sixth items, the testator gave one-

tenth of his estate to each of five named children, less debts owing by them to him. By the seventh and eighth items, he gave the remaining tenth of his estate in trust for the benefit of certain grandchildren. At the end of the eighth item, was the following clause: "In case of either of my children's death without leaving lawful issue, then I will and direct that their portion or inheritance in my estate shall be equally divided between my wife and my surviving children." *Held*, that upon the death of the testator, the share given to each child vested absolutely, and was not defeated by his subsequent death without issue, the intention of the testator being to provide alternative beneficiaries for the share of any of his children who might pre-decease him without leaving issue.

*Held*, further, that the same construction applies to the share in remainder of each child in the four-tenths of the estate given to the testator's widow for life, and that the death of a child after the testator's death and before that of the widow does not operate to divest his remainder in that share.

*Decided June 25th, 1908.*

Appeal from the Circuit Court No. 2, of Baltimore City (Gorter, J.)

By the first item of the will of Robert G. Lumpkin, he gave to his wife absolutely his dwelling house No. 1416 W. Lexington street and also gave her during her natural life fourtenths of his estate, real and personal, including therein thirtynine designated ground rents yielding annually, $2,868.

The will then provided as follows:

And at my wife's death these ground rents are to be equally divided between my children, or their children, share and share alike to my children.

Item 2nd. To my son, Edward T. Lumpkin, I give and bequeath 1-10 (one-tenth) of my estate, less whatever he shall owe me at the time of my death, and my gold watch and chain.

Item 3rd. To my son, John F. Lumpkin, I give and bequeath one (1-10) tenth of my estate, less whatever he shall owe me at the time of my death, and five hundred dollars, to be deducted from the interest that may have accrued on his notes due me.

Item 4th. To my daughter, Emma V. Clark, I give and bequeath 1-10 (one-tenth) of my estate and my affectionate love.

Item 5th. To my son, Robert G. Lumpkin, I give and bequeath one (1-10) tenth of my estate, and my bookcase in the dining room, with such books from my library as he and his mother may agree upon, less whatever he may be owing me.

Item 6th. To my son, William W. Lumpkin, I give and bequeath one (1-10) tenth of my estate, less whatever he may be owing me, and such part of my wardrobe as may be useful to him.

Item 7th. To my granddaughter, Sue W. Clark, I give and bequeath 1-20 (one-twentieth) of my estate, in trust to her mother, Emma V. Clark, to be held by her in trust for Sue, until Sue arrives at the age of twenty-one years. In this Item I bequeath to Sue:    *    *    *

Making together five irredeemable ground rents aggregating three hundred and forty-six dollars per annum, which I will and direct shall be capitalized at 5 per cent in ascertaining her share in my estate. As a special token of my love for Sue, I give her absolutely one thousand dollars out of the remaining one-twentieth of my estate.

Item 8th. After deducting one thousand dollars from the remaining 1-20 (one-twentieth) of my estate, I bequeath the balance (less $1,000) in trust to my son Edward for the use and benefit equally of his (Edward's) children. Should Edward, my son, die before his children become of legal age, I appoint my daughter as trustee for his (Edward's) children until the youngest child arrives at the age of twenty-one years, and make it as a special request that Emma, my daughter, will accept this trust in case of my son Edward's death before the maturity of his children. In case of either of my children's death without leaving lawful issue, then I will and direct that their portion or inheritance in my estate shall be equally divided between my wife and my surviving children.

The cause was argued before Boyd, C. J., Pearce, Schmucker, Burke and Worthington, JJ.

*William Milnes Maloy* and *George M. Brady*, for the appellant.

The appellant contends that the expression "death without

leaving lawful issue" in the paragragh of the will reading as follows: "In case of either of my childrens' death without leaving lawful issue, then I will and direct that their portion or inheritance in my estate shall be equally divided between my wife and surviving children," means death without leaving lawful issue during the lifetime of the testator, and not at any time as contended for by the appellees. The appellant contends, (1) that the item itself shows that her contention was the testator's intention, (2) that the will taken as a whole shows the appellant's contention to be correct, and (3) that, irrespective of the particular construction of the will as an entirety and of the particular item containing the expression "death without leaving lawful issue," said expression has been, by the leading authorities, construed to mean death without leaving lawful issue during the lifetime of the testator and not at any time. An analysis of the authorities is as follows:

The Master of the Rolls in *Edwards* v. *Edwards*, 15 Beav. 357 (1852), divided the cases into four classes;

(1) A gift to A, and if he should die then to B.

(2) A gift to A, and if he should die without leaving a child, then to B.

(3) A gift to X for life and after his decease to A, and if A should die, then to B.

(4) A gift to X for life and after his decease to A, and if A should die without leaving a child, then to B.

The above is useful as a classification. It is a modification of LORD BROUGHAM's classification in *Home* v. *Pillans*, 2 M. & K. 15.

The Edward's case was correctly decided but the dicta in this case relating to the second rule is not accepted. The Edward's case falls under the fourth rule, and it was held that if A survived X, the life tenant, that he should receive the property absolutely. It is submitted that this proves that under the second class, if A survives the testator, he takes ths property absolutely. The period to which the words refer in either case being the period of distribution.

*O'Mahoney* v. *Burdett*, L. R. App. Cases, 7 H. L. 388 (1874), is a case that has caused much confusion. This case concerned a will containing a bequest of money to A for life, and after her death to B, and if B should die unmarried or without children, the money to "revert" to D. It will be seen that the contingency was double, namely, "unmarried or without children." The Court overrules the fourth rule in the Edward case and gives as authority *Farthing* v. *Allen*, 2 Madd. 310 (1817). Although unnecessary, the Court approves the second rule of the Edward's case as it had to do in order to overrule the fourth rule in the Edward's case. We contend that the fourth rule in the Edward's case was correct and the second incorrect. The O'Mahoney case holds the fourth rule incorrect and the second rule correct. We contend that the case so far as the dicta is concerned, is not an authority, and that the contingency in that case was entirely different from the wording in the Lumpkin case. We will also show that the O'Mahoney case so far as it overrules the fonrth rule in the Edward's case is flatly in opposition to decisions by the Maryland Court of Appeals.

That the O'Mahoney case was not accepted in England is shown by the case of *Besant* v. *Cox*, L. R. 6 Ch. Div. 604 (1877). The V. Ch., in construing the following clause "In case any or either of my said grandchildren shall depart this life without leaving lawful issue, then, and in such case," etc., says, at page 607, "Now this is open to two constructions." * * * "Now, if this is intended to apply to the whole life of the devisees, the grandchildren, nothing can be more absurd than that, because they can none of them do anything with the property; they cannot sell it, they cannot settle it, they cannot mortgage it, they cannot do anything with it during the whole of their lives;" * * * "To that construction, therefore, I am entirely opposed, but then there is another construction, absurd as the will may be which will do more justice and which is in accordance with the rules of this Court which say that in all cases of vesting properties, you must make it vest absolutely as early as possible; and in all these

gifts over which have produced the inconsistency pointed out when they are to be during the whole lives of the devisees, the rule is to cut them down and to make them operate as early as possible." * * * "It has been contended that the case of *O'Mahoney* v. *Burdett*, is opposed to these obvious and thoroughly settled rules of construction. Now *O'Mahoney* v. *Burdett*, as I read it, decides merely this, that wherever there is a gift in fee with an executory devise over upon the death of the first taker without issue, that gift over will take effect at the death of the devisee, unless a contrary intention appears by the will. But if upon the whole will, the Court collects the contrary intention, it leaves it entirely open to the Court to put a construction upon it which will effectually carry into effect the obvious intention of the testatrix." * * * "But a very recent case since *O'Mahoney* v. *Burdett*, viz., the case of *Olivant* v. *Wright*, 1 Ch. D. 346, which was decided by the Court of Appeals in November, 1875, has been cited, and in my opinion entirely supports the construction which I put upon this will and is undistinguishable from it."

Notwithstanding the revolutionary character of the O'Mahoney case it has been accepted by textwriters, and through the influence of these works has affected decisions.

In 3 *Jarman on Wills*, 5 ed. (*Randolph and Talcott*), p. 640, we find the following: "The general rule is that where the context is silent, the words referring to the death of a prior legatee, in connection with some collateral event, apply to the contingency happening as well after as before the death of the testator." The editors say "Mr. Jarman thought it hazardous to lay this down as a general rule, but subsequent authorities, it is conceived, have established it." The subsequent authority is evidently the O'Mahoney case. It is submitted that chapters 48 and 49 in the third volume of Jarman, contain statements and cases to prove our contention. For instance, the following, which precedes what we have just quoted and is contained on page 640, vol. 3 of the fifth edition. "These cases, it is conceived, fully warrant the position that, in the absence of an explanatory context a gift over, to take effect in the event of

the prior devisee or legatee dying under certain circumstances, applies to the event happening in the lifetime of the testator; the prevention of lapse being, it is considered, one of the purposes of such substituted gift."

The successive editions of Jarman show a disposition to change position on the point under discussion.

In the sixth edition of *Jarman (Bigelow)*, vol. 2, p. 429, star page 1285, occurs the following: "The expression which forms the subject of consideration in this chapter (the failure of issue), stands pre-eminent for the number and variety of the questions of construction to which it has given rise." And on p. 719, star page 1597, vol. 2, 6 ed., *Jarman on Wills (Bigelow)*, the editor puts a note from a New York case that the rule as stated by Jarman applies only to personalty.

In the first edition of the *Am. & Eng. Ency. of Law*, vol. 29, p. 504, the rule as laid down in *O'Mahoney* v. *Burdett*, is set out. Citations are the *O'Mahoney case, Jarman on Wills*, *Farthing* v. *Allen*, and *Bowers* v. *Bowers*, the last named cases being cited against us, but being directly with us. The list of cases to the contrary is extremely long, but the rule is copied from the O'Mahoney case.

In the second edition of the *Am. & Eng. Ency. of Law*, vol. 17, p. 573, we find the following: "Where real estate is devised in terms denoting an intention that the primary devisee should take a fee on the death of the testator, coupled with a devise over in case of his dying without issue, the words refer to a death without issue during the lifetime of the testator and the primary devisee surviving the testator takes an absolute estate in fee simple." A long list of English and American cases follows this statement.

In the case of *Vanderzee* v. *Slingerland*, 103 N. Y. 47 (1886), the Court (at page 51), deals with the exact question that we are discussing. The Edward's case and Jarman's statement of the law are discussed. The Court holds with us.

In *Doe* v. *Considine*, 6 Wallace, 73 U. S. 458 (1867), the estate was plainly a life estate and the question that we are considering was not passed upon.

In *Abbott* v. *Essex Company*, 18 Howard, 202 (1855), the language of the Court seems to be against us. JUDGE WOODS in the *First National Bank* v. *DePauw*, 86 Fed. Rep. 722 (1898), says, (at page 725), "In *Abbott* v. *Essex Company*, it seems to have been assumed that the death referred to one of the devisees 'without any lawful heirs of their own' which was held to mean a definite failure of issue, might occur after the death of the testator. The question considered was whether the will gave estates in fee tail general with cross remainders in fee simple or a fee simple conditional with executory devisees over."

He further says in considering the case of *Britton* v. *Thornton*, 112 U. S. 526, L. Ed. 28, 816 (1884), "that the expression of the will was 'dying in her minority' which of course might be after the death of the testator." The Britton case was an appeal from Pennsylvania, where we will show the law is directly with us.

*Theobald on Wills*, 6 ed., p. 635, gives the rule against us, but the citations do not prove the text. On p. 636 of the same work, the author gives rules which prove our contention.

It is established by the Maryland cases, that if a devise be given to A, and in the event of his death to B, that if A survives the testator, he takes the devise absolutely. The following cases from other States show that the addition of the words "without issue" does not alter the rule. *Coe* v. *James*, 54 Conn. 511 (1886); *In re Johnson*, 23 Rhode Island, 111 (1901); *Denise* v. *Denise*, 37 N. J. Eq. 163 (1883); *Richards* v. *Gray*, 6 Houst. (Del.) 232; *Andrews* v. *Sargeant*, 71 Verm. 257 (1889); *Donnell* v. *Newburyport*, 179 Mass. 187 (1901); *Meacham* v. *Graham*, 98 Tenn. 190 (1897); *Stratton* v. *McKinnie*, 62 S. W. Rep. 636 (Tenn. 1900); *Jackman* v. *Jackman*, 73 S. W. Rep. 776 (Kan. 1903); *Murchison* v. *Whitted*, 87 N. Car. 465 (1882); *Chaplin* v. *Turner*, 2 Rich. Eq. (S. Car.) 136 (1846); *Collins* v. *Collins*, 116 Iowa, 703 (1902); *Lovas* v. *Olson*, 92 Wis. 616 (1896.)

The Ohio decisions are somewhat conflicting, but we find some comfort in *Baker* v. *McGrew*, 41 Ohio State Rep. 113

(1884) and in *Patterson* v. *Earhart*, 6 Ohio Decisions, 16 (1893.)

The Indiana decisions establish our contention. *First National Bank* v. *DePauw*, 86 Fed. Rep. 722, is directly in point. In *Fowler* v. *Duhme*, 143 Ind. 248 (1895), the rule is expressly laid down. See also *Morgan* v. *Robins*, 152 Ind. 362; *Antioch* v. *Branson*, 145 Ind. 312, and especially *Wright* v. *Charley*, 129 Ind. 257.

In Pennsylvania the rule is well established. In *Mickley's Appeal*, 92 Penn. State Rep. 514, (1880), the appellant's counsel cited *Edwards* v. *Edwards*, the *O'Mahoney case* and the *Ingram case*. CH. J. SHARSWOOD lays down our rule. See also *Mitchell* v. *Pittsburg*, 165 Penn. State Rep. 645; *Flick* v. *Oil Company*, 188 Penn. State Rep. 317; *Coles* v. *Ayres*, 156 Penn. State Rep. 197; *King* v. *Frick*, 135 Penn. State Rep. 575; *Schoonmaker* v. *Stockton*, 37 Penn. State Rep. 461.

The New York Rep. contain many cases that bear out our contention. There is a long note by the reporter appended to *Quackenbos* v. *Kingsland*, 102 N. Y. 128, as printed in 55 Amer. Rep. 771, which reviews not only the N. Y. law, but many of the English decisions and text books. See also *Benson* v. *Corbin*, 145 N. Y. 351; *In re Tierken*, 131 N. Y. 391. The *N. Y. L. & W. Co. case*, 103 N. Y. 89, was decided upon the peculiar wording of the will.

The first rule is the law in Maryland. *Dorsey* v. *Dorsey*, 9 Md. 31 (1856); *Branson* v. *Hill*, 31 Md. 181 (1869); *Reiff* v. *Strite*, 54 Md. 298 (1880); *Fairfax* v. *Brown*, 60 Md. 50 (1883); *Engel* v. *Geiger*, 65 Md. 538 (1886); *Bentz* v. *Maryland Bible Society*, 86 Md. 102 (1897); *Gerting* v. *Wells*, 100 Md. 93 (1904).

The third rule is sustained by the Maryland authorities. *Hill* v. *Hill*, 5 G. & J. 88 (1833); *Hammett* v. *Hammett*, 43 Md. 307 (1875); *Straus* v. *Rost*, 67 Md. 465 (1887); *Mercantile Trust* v. *Brown*, 71 Md. 166 (1889); *Reid* v. *Walbach*, 75 Md. 205 (1892); *Cox* v. *Handy*, 78 Md. 108 (1893); *Sherbonnier* v. *Goodwin*, 79 Md. 55 (1854); *Slingluff* v. *Johns*, 87 Md. 273 (1898); *Small* v. *Small*, 90 Md. 550 (1900); *Planker*

*v. Smith*, 93 Md. 389 (1902); *Lee* v. *O'Donuell*, 95 Md. 538 (1902); *Wilson* v. *Bull*, 97 Md. 128 (1903); *Ridgely* v. *Ridgely*, 100 Md. 230 (1905).

The fourth rule as originally stated in the Edwards case (and not as in the O'Mahoney case), is laid down in *Budd* v. *Posey*, 22 Md. 48 (1864); *Meyer* v. *Eisler*, 29 Md. 28 (1868).

The second rule has neither been raised nor passed upon in any of the Maryland decisions. We contend that the first rule in the Edwards case is clearly the law in Maryland. If we show "that death without issue" is held to be no greater contingency; in other words if "dying" and "dying without issue" following an absolute devise, are both referred to death and death without issue, respectively, before the death of the testator, then we have shown that the second rule in the Edwards case is incorrectly stated.

We have given decisions to the point in other States. In Maryland, *Gerting* v. *Wells*, 100 Md. 93, and *Bentz* v. *Maryland Bible Society*, 86 Md. 114, establish our contention.

*W. Burns Trundle*, for the appellees.

The will having been made with Code, Art. 93, sec. 317 in force, the eighth clause must be construed to mean, and be read as if it contained the words, "In case of either of my children's death without leaving lawful issue *living at the time of his or her death.*"

The contingency, then, is not too remote, and the executory devise over is valid. If William W. Lumpkin, the first taker, had had lawful issue, which predeceased him, then there would have been, in the language of the statute, a failure of issue in his lifetime. That, however, did not happen. He died without leaving issue living at the time of his death. So that the very contingency which must, by the mandate of the statute, be read into the will of his father, Robert G. Lumpkin, in connection with the words, "in case of either of my children's death without leaving lawful issue," has happened, and the executory devise over to the wife of the testator and his surviving children, is now operative.

The leading case is *Mason* v. *Johnson*, 47 Md. 347, being the first in which the question was presented for decision, after the passage of the Act of 1862, ch. 161, and has been followed by a long line of cases. See also *Whitby* v. *Jump*, 94 Md. 185.

But it is argued that the contingency referred to in the eighth clause of the will must have happened in the lifetime of the testator, that the words of the eighth clause, "in case of either of my children's death without leaving lawful issue," mean death *before a particular time*, to wit, the time of the testator's own death, and not at any other time.

We have already seen that the statute requires there shall be read into the will after the words, "In case of either of my children's death without leaving lawful issue," the words "living at the time of his or her death." When *a particular time* is thus specified in the will; to wit, the time of the first taker's death, how is it possible, under the rule of *expressio unius*, to imply any other time?

To hold that the words, the death of a child without leaving lawful issue in the eighth item of this will, must be construed to mean, not what the statute says it shall be construed to mean, to wit, the death of a child of the testator without leaving issue living in the lifetime or at the time of the death of such child, but the death of such child "in the lifetime of the testator," without leaving issue then living, is to interpolate into the will words which are not there. And this although Code, Art. 93, sec. 310, declares: "That all devises and bequests of any lands or tenements or interests therein, and all bequests of any goods, chattels or personal property of any kind, as described in section 307, shall be *in writing*, etc.

If the testator really intended to confine the time of the death of the first taker without leaving issue to his (the testator's) own lifetime, how easy for him to have said so in the will. The eighth clause would then read: "In case of either of my children's death *in my lifetime*, without leaving lawful issue."

If he had any such intention, he studiously refrained from expressing it. To put those words in the will by construction

is not, indeed, to construe the will as written, but to make a new will for the testator.

*Bowers* v. *Bowers* (1870), L. R., 5 Ch. App. 254, is in point. "It is not *prima facie* to be supposed that he (the testator) contemplates the death of the objects of his bounty in his lifetime, but he is to be considered as contemplating their death at some later period, unless he uses language which shows that be is referring to the time of his own death. Take the case of an immediate gift to A, and 'in case he shall happen to die,' then to B. Here death being spoken of as a contingent, the testator must be referring to death before some particular period; and as there is no other period to which it can be referred than his own death, we are obliged to treat the gift over as taking effect only in case of A dying in the testator's lifetime. But if the gift over is 'in case A shall happen to die without issue,' we have a contingency, and there is no occasion to confine the death to any particular period."

*Smith* v. *Stewart*, 3 DeGex & Smale, 253, is also in point. The testator directed the residue of his estate to be divided into fourteen parts, and gave certain parts or shares to certain persons, and then added: "And I direct that the whole of said legatees shall have the benefit of survivorship between them, in the event of any one or more of them dying without leaving issue." BRUCE, V. C.: Three constructions have been or may be suggested, viz.:

First. That they mean "dying in my lifetime without leaving issue."

Second. That they mean "dying after my decease without leaving issue."

Third. That they mean "dying, whether in my lifetime or after my decease, without leaving issue."

As to the first construction he said: "This construction appears to me one not according to the proper force, ordinary sense or presumptive meaning of the words;" and was rejected.

Ever since the cases of *O'Mahoney* v. *Burdett*, L. R. 7, H. L. 388, and *Ingram* v. *Soutten*, same volume, p. 408, decided in 1874, referred to in the opinion below, this question has been considered as settled in England.

In the late case of *Duffill* v. *Duffill* (1903), Appeal Cases, 491, the testator, after dividing equally his residuary estate between his two sons, directed that "in the event of either of my two sons dying before his brother, without legitimate issue, then his share shall become the property of his surviving brother; but if there are any legitimate children surviving their father, then 'for their benefit as directed.'" Held, that the bequest created a vested interest in the sons, but one liable to be divested as to the son first dying (whether before or after the testator's death) in favor of the objects named in the clause of substitution.

LORD DAVEY: "In the first place, the event on which the substitution is to take place of 'either of my sons dying before his brother,' *prima facie* means death at any time, and you would require to interpolate or imply words to confine it to death in the testator's lifetime."

The earliest statute declaring that the words, "die without issue," or "without leaving issue," or any other words which might import either a want or failure of issue of any person in his lifetime or at the time of his death, or indefinite failure of issue, should be construed to mean a want of failure of issue in the lifetime or at the time of the death of such person, not an indefinite failure of issue, unless a contrary intention should appear by the will, was the North Carolina Act of 1827, ch. 7 (Code N. C., par. 1581), in substance the same as our Act of 1862, ch. 161. This statute was ten years prior to the English statute of 1837, 1 Vict., ch. 26, sec. 29. The North Carolina decisions would, even if the case were *res integra* in Maryland, have great force. *Black on the Interpretation of Laws*, 32.

In *Buchanan* v. *Buchanan*, 99 N. Carolina, 308, the seventh item of the will under construction was: "I give and bequeath to my son Richmond all my remaining property, or all my property not otherwise disposed of, and should Richmond die without a bodily heir, it is my will and desire that my son Andrew should have it all." It was held that Richmond took an estate in fee terminable at his decease without issue, and in

such event the estate vested in the heirs of Andrew. It was held that the words "die without bodily heir" mean, not die in the lifetime of the testator without bodily heir, but die at any time. "We see no sufficient reason for qualifying the words 'dying without issue' by adding what he does not say, that the '*dying*' must be before he dies himself."

As to the word "then," see also *Gibson* v. *Haddaway*, 68 Geo. 378; *Parrish's Heirs* v. *Ferris*, 6 Ohio St. 577; *Niles* v. *Gray*, 12 Ohio St. 328; *Piatt* v. *Newton*, 37 Ohio St. 354; *Walder* v. *Walker*, 20 Ohio Ct. Ct. 412; *Marshall* v. *Marshall*, 42 S. Carolina, 440.

In *Bradsby* v. *Wallace*, 202 Ills. 239, the testator gave certain real estate to his son, James A. Bradsby, and added: "But should the said James A. Bradsby die leaving no heirs, then the said devised property above described to descend to William B. Bradsby, Mary Wallace and Paulina North." James A. Bradsby survived the testator and claimed that under the will he took an absolute fee. The Court held that he took a base fee, determinable upon his death *at any time* without leaving children.

In *Harvey* v. *Bell*, 118 Ky. 523, by clause 9 of his will, the testator declared: "Should either of my said grandchildren (naming them) die without issue of his or her body living, I devise the property herein devised to the one so dying to be equally divided between the remaining ones and their issue."

The Court says: "On the other hand, where there is no intervening estate, and no other period to which the words 'dying without issue' could be reasonably referred, they are held, in the absence of something in the will evidencing a contrary intent, to create a defeasible fee, which is defeated by the death of the devisee *at any time* without issue then living." The purpose of the testator was "that the property should not go to others as long as any of his blood remained." See also *McCune* v. *Goodwillie*, 102 S. W. (Mo.), 998; *Dilts* v. *Clayhaunce*, 62 Atl. (N. J.), 673; *Hall* v. *Terrell*, 123 Geo. 56.

What reason can be suggested why the testator should intend that in case of a son or daughter dying childless in his

own lifetime, the devise or gift to such son or daughter should go over to his wife and the surviving children, and not in case that should happen after his own death? Is not his purpose plain to keep the property in his own family and among his own blood? No stranger to his blood, none but himself, his wife, children and grandchildren can be interred in his burial lot. That being the plain and paramount purpose of the testator, the passing of the property over to those of his own family and blood, in case of a child dying childless, what possible difference could it make to him, from a common-sense point of view (and he was evidently a man of strong sense), whether such dying childless should occur before or after his own death? It would certainly require clear language declaring a different intent to overcome the general rule as recognized in this State and elsewhere, of which there is not a trace in the will.

If the construction set up by the appellant is sound, then the qualifying eighth clause *is virtually useless.* Apart from that clause, the children living at the death of the testator would have taken an absolute fee. Anyone dying before the testator, without leaving issue, would have taken nothing. *Henderson* v. *Henderson*, 64 Md. 189.

Under clauses two to six, inclusive, read in connection with clause eight, at the death of the testator, the children each took a vested fee in their respective shares defeasible upon his or her death at any time without leaving issue living at the time of his or her death. They have not, nor has any of them, the power to convey an absolute fee, and thereby defeat the limitation over; no such power is given them; there is, therefore, no repugnancy. This point would seem to be finally settled by *In re Banks*, 87 Md. 435, 438.

SCHMUCKER, J., delivered the opinion of the Court.

This record contains two appeals, from decrees of the Circuit Court No. 2, of Baltimore City, taken by Cora Lee Lumpkin, widow of William W. Lumpkin. The first appeal was by her, in her own right, from a decree dismissing her

petition to reopen and modify a decree theretofore passed in the case of *Hannah S. Lumpkin et al.* v. *Harriet V. Lumpkin et al.* The second appeal was by her, as executrix of her husband's will, from a decree dismissing a bill of review filed by her as executrix for the same purpose as her petition. The cases on the petition and the bill of review were heard together by the Court below, and, as both of the proceedings were instituted for the ultimate purpose of procuring a correct construction of the will of the late Robert G. Lumpkin, the two appeals will be considered by us together.

It appears from the record that Robert G. Lumpkin, of Baltimore City, died on August 10th, 1905, seised of a dwelling house and 164 fee simple ground rents and possessed of personalty of large value.   He left a will, which will be more fully noticed hereafter, naming his widow Hannah S. Lumpkin and W. Burns Trundle as executors and they duly qualified as such.   The widow and five children and three grandchildren survived the testator.   The children were Edward T.—John F.—Emma V.—Robert G. L. and William W.   At the death of the father Edward T. was married and had two infant children and Emma V. was the wife of James Clark and had one infant child.   Rogert G. was also married but had no children, and William W. married the appellant on September 27th, 1905, after his father's death.

Robert G. Lumpkin by his will, which was made on January 22nd, 1900, gave to his widow his dwelling house and its contents absolutely and also gave her four-tenths of his entire estate for her life with remainder to his children to be equally divided between them.   He then gave, without any expressions of qualification or limitation to each one of his five children one-tenth of his estate less whatever the recipient might owe him at his death.   The testator then after giving the remaining one-tenth of his estate in trust for his grandchildren added at the end of the clause creating the trusts the following sentence. *"In case of either of my children's death without leaving lawful issue then I will and direct that their portion or inheritance in my estate shall be equally divided between my wife*

*and my surviving children.*" The true meaning of that sentence is the question of construction lying at the root of the entire litigation of which the present appeals are the latest development. The appellant contends that the death therein referred to of a child without issue means such a death in the lifetime of the testator, while the appellees insist that it means such a death whenever it shall occur. It is conceded by all parties that under Art. 93, sec. 325, of the Code, the devise ·over is not void for indefiniteness.

On September 22nd, 1905, a bill was filed in the Circuit Court No. 2, of Baltimore City, by the widow and children of Robert G. Lumpkin against the three infant grandchildren for the two-fold purpose of a partition of the ground rents of which he died seised according to the terms of his will, and also a construction of his will in order "to determine what estates the devisees and legatees under said will take in their respective shares thereunder," and for further relief. Under that bill a commission was issued to make a partition in kind of the rents, and the commissioners made their return in the usual manner making an allotment of 112 of the rents in groups in severalty to the respective children and grandchildren and allotting the remaining 52 rents to the widow for life, but making no allotment or disposition of the remainder therein after her death. The case was then submitted for final decree and referred to a Master and, on the coming in of his report providing that each child should hold the rents allotted to him "in fee defeasible upon the happening of the contingency of his dying without leaving lawful issue him surviving at the time of his death," certain of the plaintiffs through special counsel filed exceptions to the report upon the ground that the title of the children to the rents respectively allotted to them should have been made defeasible only upon their death respectively without issue *during the life of the testator's widow, Hannah S. Lumpkin.* The exceptions to the Master's report were submitted by consent July 13th, 1906, on briefs to be filed, and on the second day thereafter the final decree was filed overruling the exceptions and confirming the return of the commissioners.

Upon an examination of the final decree it appears that the clause of the will of Robert G. Lumpkin relative to the death of any of his children without issue, received no full or complete construction nor any construction at all touching its operation upon the interest taken by the children as legatees of the very large personal estate give to them by the will, or upon the interest devised to them in the 52 ground rents allotted to the widow for her life. The only construction of the will made by the decree was the inferential or implied one resulting from the confirmation of the Master's report and the direction that each child hold the rents, which had been allotted to it in severalty, "in fee defeasible upon the happening of the contingency of his dying without leaving lawful issue him surviving at the time of his death as expressed in the eighth item of said will."

At the time of the filing of the original bill for partition and the construction of the will of Robert G. Lumpkin neither his executors, nor the wife of his son, Robert G., who was then married were made parties to the case. On October 4th, 1905, however a petition was filed by the plaintiffs then in the case calling the Court's attention to the absence from the record of Robert's wife and of the appellant who had, since the filing of the bill married the son, William W., and asking leave to amend the bill by interlineation making the two wives parties plaintiff to the case. Leave having been granted the plaintiffs interlined the names of the two wives among the names of the plaintiffs in the bill, but so far at least as the appellant is concerned she never authorized any counsel to appear for or represent her in the case nor was she ever summoned or otherwise brought into the case or under the jurisdiction of the Court, and it is conceded that she never was a party to the case until she filed her petition to open the decree.

On November 18th, 1907, more than eighteen months after the passage of the final decree and seven months after the filing by the appellant of her petition to reopen the decree and her bill of review, the executors asked for and obtained leave of Court to be made parties plaintiff to the case *nunc pro tunc*

by amendment by interlineation on the bill which was accordingly made.

It also appears from the proceedings that on the 17th of February, 1906, the executors of Mr. Lumpkin's estate passed in the Orphans' Court their first administration account by which they distributed to the appellant's husband for account of his share of the personalty, stocks and bonds of the appraised value of $14,792.89, "subject to the provisions of his father's will" and that The Pocahontas Consolidated Company, one of the corporations whose stock was so distributed to him, declined to transfer it to him subject to the provisions of the will, and that such stock is still in the hands of the executors who now claim title to it as executors because of the death of her husband without issue.

On the 15th of April, 1907, after the enrollment of the decree already referred to, the appellant filed in the case her petition under affidavit for the vacation of the decree and rehearing of the case upon the construction of the will of Robert G. Lumpkin, particularly in so far as relates to the eighth clause thereof, and that she be made a party defendant to the case. On the same day she filed in the same Court, as executrix and sole devisee and legatee of her husband, who had died without leaving issue, a bill of review also under oath against all of the parties to the original case praying that her bill of review might be consolidated with that case and the final decree which had been passed there in on January 15th, 1906, be reviewed and reversed or modified so as to declare that the children of Robert G. Lumpkin, all of whom have survived him, are entitled to hold their devises and bequests under his will in fee simple and by an unconditional title. With the bill of review was filed as an exhibit a certified copy of the will of the appellant's husband making her his executrix and sole devisee and legatee.

In her petition and bill of review the appellant avers that the partition of the rents made in the original case was just and fair and declares her willingness to abide by and confirm it, except as to the description therein of the character of the title by which the

children were to hold the rents allotted to them respectively. She also alleges that no sales or conveyances of any of the rents have been made and that no rights of third parties have intervened or stand in the way of the relief for which she asks, and further says that since her discovery of the passage of the final decree and its true nature she has used all of the diligence which her limited means permitted to assert her rights.

The grounds for relief set up in the petition to vacate the decree and in the bill of review are practically the same and consist of alleged errors apparent upon the proceedings, such as the insufficiency of parties, appearing by the pleadings and proof to be necessary, and the failure of the decree to fully dispose of the whole subject-matter of the suit. Both the petition and the bill of review allege that the appellant has always been a resident of the State of Virginia and that she did not have notice at any time during the pendency of the suit upon the original bill that her rights were put in jeopardy or being adjudicated therein or that any attempt had been made to make her a party thereto or that the will of her father-in-law was being construed therein; but the only information she had was that his estate was being administered and his property divided in the ordinary course, and that she never until the filing of her petition to reopen the case had authorized anyone to appear as counsel or solicitor therein for her. She further averred that under the circumstances in which the decree of January 15th, 1906, was passed it was practically but a consent decree obtained by the members of the family residing in Baltimore City and that neither she nor her husband who at that time resided with her in Virginia, although he was nominally represented in the case, supposed that it was anything other than a proceeding to divide the ground rents. She further averred that the construction put upon the will by the decree was erroneous and that, if it were permitted to stand, it would result in an unjust and unlawful destruction of her marital rights in her husband's portion of the rents as well as of her title as the executrix and sole devisee of his will to the real and personal estate given to him by his father's will.

The adult appellees answered the petition, and answered and demurred to the bill of review, admitting generally the existence, character and result of the suit on the original bill but denying the plaintiff's construction thereof and referring to the proceedings themselves for the full particulars thereof, and also admitting that the appellant Cora Lee Lumpkin had not been made a party to that suit prior to the filing of her petition and that she had never authorized any solicitor or counsel to appear for her and that none had so appeared. But they deny that the appellant was ignorant that her rights as the wife of Wm. W. Lumpkin were being adjudicated in the case or that she did not discover that fact until after the passage of the final decree. On the contrary, they aver and insist that during a visit made by her to the house of her husband's mother in Baltimore City in December, 1905, the existence and nature of the partition suit were frequently and freely discussed in her presence and that she at times participated in the discussions, and that she thus learned and knew the true nature of the case and the issues involved in it, and also insist that she has by her laches disentitled herself to prosecute her petition or her bill of review.

The Court below entertained both the petition and bill of review and heard them together on the petition and the bill and the answers thereto and dismissed them by separate decrees, not in either case because they had been filed improperly or without right, but because the learned Judge was of the opinion that the will had been correctly construed by the final decree of January 15th, 1906, in the original case. The decree of Court dismissing the petition contained also the following provisions.

"And it further appearing that by the said original decree in this cause no construction was placed upon the first clause of the will of Robert G. Lumpkin, deceased, and it is further ordered, adjudged and decreed that the clause in said will reading as follows:

"In case of either of my children's death without leaving lawful issue, then I will and direct that their portion or inher-

itance in my estate shall be equally divided between my wife and my surviving children," does not apply to the first clause of said will, whereby Robert G. Lumpkin, deceased, after giving to his widow a life estate in four-tenths of his estate, real and personal, including in said four-tenths certain enumerated ground rents, provided as follows:

"At my wife's death these ground rents are to be divided equally between my children or their children, share and share alike to my children."

We think the learned Judge below was correct in entertaining the appellants petition and bill of review, but we are unable to agree with him either in the conclusion that the limitation over in the eighth clause of the will upon the death without issue of any of the testator's children did not apply to the remainder in the four-tenths of the ground rents given to his wife for life. Nor are we able to agree with him that the limitation so operated upon the rents given directly to the children as to reduce their estate therein to a fee defeasible by their death whenever it might occur without issue. In our judgment the limitation over was intended to apply with equal force to the entire share or interest of each child in the father's estate and to operate as an alternative gift to the mother and other children of the share of any child who might die without issue in the father's lifetime. As all the children survived the father the limitation over was never called into operation and each child took at the father's death an estate in fee in his share of the realty, and an absolute estate in his share of the personalty, subject however as to the enjoyment of his share of so much of the estate, as was given to the mother for life, to her life estate therein.

There are several errors, apparent upon the face of the proceedings in the original case, affording sufficient ground for reopening it and modifying the decree therein so far as it undertook to construe the will of Mr. Lumpkin. These proceedings were defective both for want of proper parties and because the decree did not finally dispose of the whole subject-matter of the case.

Conceding that the appellant as the wife of one of the sons of the testator was not a necessary party to the case for the purposes of the partition of the rents which did not impair or destroy her dower but merely transferred it from her husband's undivided share of the rents to those of them which were allotted to him in severalty, she was a necessary party for the purpose of the construction of the will. The partition did not put her dower in the rents in jeopardy but the construction of the will not only put her marital rights in her husband's real and personal estate in peril, but the interpretation of the will adopted by the Court, if it were to stand, would in effect deny the existence of those rights. Before that can be done she must have notice and an opportunity to be heard. The plaintiffs elected to make her a party and obtained the Court's authority to do so but the steps they took for that purpose were entirely ineffectual to bring her under the Court's jurisdiction. They went so far as to interline her name upon the bill among the plaintiffs but she was a non-resident of the State and they neither procured her to appear by counsel nor summoned her nor took any other steps to bring her under the jurisdiction of the Court. Nor can we give our assent to their contention that she, a non-resident *feme covert*, was bound by the proceedings because she heard them discussed by her husband's family on a visit to Baltimore in December, 1905, and was thereby brought within the operation of the principle announced by us in *Albert* v. *Hamilton*, 76 Md. 304; *Riley* v. *The First Natl. Bank*, 81 Md. 28; *Williams* v. *Snebley*, 92 Md. 21; *Fetterhoff* v. *Sheridan*, 94 Md. 454, and other cases, that persons directly interested in a suit who know of its pendency and have the right to control, direct or defend it and fail to appear and assert their rights are concluded by it. The appellant's marital interest in her husband's property came into existence *pendente lite* but it arose by operation of law and not by assignment from him and she should therefore, in view of her direct interest in the subject-matter of the suit, have been made a party to it in order to bind her by the construction of the will. *Calvert on Parties*, *91, 92, 97; *Story Eq. Pl.*, sec. 158, 342; *Miller's Eq.*, 56, 57; *Handy* v. *Waxter*, 75 Md. 521-2-3.

The executors of a will disposing of personal property are always essential parties, to a bill to construe provisions of the will affecting the personal estate as the title is in them until distribution has been made and the executors of Mr. Lumpkin's will should have been made parties to the present case before the passage of the decree. The prayer of the original bill for the construction of the will having been a broad one asking the Court to determine what estates both devisees and legatees would take in their respective shares thereunder, the decree should have determined whether the controverted clause of the will was intended to operate upon the personalty and also upon the remainders given to the children in the ground rents devised to the widow for life and if so what its operation was upon those portions of the estate. The decree in remaining silent upon those subjects failed to pass upon the whole subject matter of the suit or determine the rights of the parties in reference thereto, thus presenting a defect for which we have repeatedly held a decree to be erroneous. *Hurtt* v. *Crane*, 36 Md. 31; *Contee* v. *Dawson*, 2 Bl. 292; *Evans* v. *Iglehart*, 6 G. & J. 171, 204.

The case for the construction of the will, with the appellant thus absent and unrepresented, was submitted for decree without argument upon briefs of two solicitors one of whom asserted that the controverted clause in the will operated to defeat the estate of any child of the testator upon his or her dying without issue *whenever that event occurred,* and the other of whom contended that the clause operated to defeat the estate of the child in the event of its dying without issue *in the lifetime of the testator's widow.* So far as the record shows, the construction of the will favorable to the appellant, which we regard as the correct one, that the controverted clause operated to defeat the estate of such only of the children as might die without issue *in the lifetime of the testator,* was not urged upon the Court by any solicitor. We do not at all mean to intimate that the counsel in managing the case or in presenting their respective views upon their briefs had any plan or purpose to injure the appellant or disregard her rights, but we

think that the failure of the appellees, when they had obtained
leave of Court to make the appellant a party to the suit, to effect-
ually have her made such would, if the decree were to stand,
practically result in the destruction of her estate without giving
her notice and affording her an opportunity to be heard.   In
view of these facts, and the further circumstance that the rights
of no third parties are shown to have intervened since the
passing of the decree, the proceedings in the original case
should be reopened and the decree in so far as it can be taken
to be or operate as a construction of the will be modified and
corrected so as to declare its true construction.

Turning now to the interpretation of the will before us and
especially to the ascertainment of the purpose of the testator
in inserting therein the controverted sentence at the end of the
eighth clause, we are reminded, at the outset, of the fact that
the construction of wills has been prolific of adjudications in
the history of English and American jurisprudence.   The
counsel for the appellant have with great skill and industry
cited upon their brief and undertaken to collate and distinguish
no less than seventy-seven Maryland cases, in addition to the
other authorities, relied on by them; and the counsel for the
appellees has with like diligence and ability fortified his brief
with numerous citations.   As the law applicable to the issue
before us and the cases of the various Courts, English and
American, bearing upon the subject have been on different
occasions carefully considered by this Court, we will not again
enter upon a review of those cases or attempt to reconcile the
diversity and contradictions which they disclose.

It is a matter of prime importance, in ascertaining the in-
tention of a testator, to consider the language in which he
himself has given it expression.   Directing our attention to
the will of Mr. Lumpkin we find that its language is not ob-
scure and that the application to its provisions of a few funda-
mental principles of interpretation, which have received repeated
recognition from this Court, will enable us to determine its
true operation upon the estate of which it was intended to dis-
pose.   We will first state the principles of interpretation to

which we refer and will then in their light consider the provisions of the will.

A testator may, in making his will, fix the absolute vesting of the different estates created by it at such times as he sees fit within the period allowed by law, and when he has done this with reasonable certainty the Courts in construing his will will give effect to his wishes. *Larmour* v. *Rich*, 71 Md. 383; *Engel* v *Geiger*, 65 Md. 544; *Strauss* v. *Rost*, 67 Md. 465; *Bailey* v. *Love*, 67 Md. 603; *Trust Co.* v. *Brown*, 71 Md. 166; *Demill* v. *Reid*, 71 Md. 175; *Slingluff* v. *Johns*, 87 Md. 276; *Thom* v. *Thom*, 101 Md. 456; *Reilly* v. *Bristow*, 105 Md. 333. Many of these cases as well as others might be cited in support of the other familiar proposition, also relied on in *Larmour* v. *Rich*, that "the law it may be conceded favors the early vesting of legacies and the Courts will, as a general rule, where there is more than one period mentioned, adopt the earlier one, if there be no expression or no intent plainly deducible from the terms used that the testator meant to select the later and not the earlier period." The Court especially relied on the last mentioned doctrine in *Meyer* v. *Eisler*, 29 Md. 28; *Tayloe* v. *Mosher*, 29 Md. 443; *Fairfax* v. *Brown*, 60 Md. 50; *Crisp* v. *Crisp*, 61 Md. 141; *Strauss* v. *Rost*, 67 Md. 477; *Webb* v. *Webb*, 92 Md. 111; *Mercer* v. *Safe Deposit Co.*, 91 Md. 114. Neither one of the two foregoing leading principles of interpretation has ever been questioned by this Court although, in the application of them to particular cases, results have been arrived at, owing to the endless variety of provisions found in the wills construed, which until carefully examined may be seem to be lacking in harmony.

In our opinion Mr. Lumpkin has indicated in his will with reasonable certainty the time at which he intended the portions of his estate given by it to his children to finally vest, or, in other words, the time prior to which he intended the death of one of his children without issue to occur in order to cause its share to pass over to his wife and other children.

The scheme of the will is both natural and simple and, to our minds, its provisions indicate with reasonable certainty

what disposition the testator desired to be made of his whole estate. By the first clause he gives absolutely to his widow his dwelling and its contents, and then gives her four-tenths of his entire estate for her life with remainder to his children in equal shares. He then gives absolutely, without limitation or qualification, to each of his five children one-tenth of his estate less what may be due him from the child. The children are not dealt with as a class but the gift of one-tenth of the estate is made to each one by name in a separate paragraph of the will and is complete in itself. One twentieth of the estate is then given to the testator's grandchild, Sue W. Clark, with the direction that it be held in trust for her, until she reaches the age of twenty-one years, by her mother, who is the testator's daughter. The remaining one-twentieth of the estate is given to the testator's son Edward for the use and benefit of the latter's children, he to hold it in trust for them until the youngest child arrives at twenty-one years of age.

· After having thus given the entire estate in general and absolute terms without any qualification, except the temporary trusts as to the two-twentieths given to grandchildren, to parties *in esse* and capable of taking who constituted his own family, the testator added at the end of the eighth paragraph of his will the provision for any of his children's death without issue, which has furnished the bone of contention in the case.

We think that the testator, having in the earlier part of his will given absolutely to his children in specified portions nine-tenths of his estate, subject to his wife's life interest in four-tenths, intended by the clause in question only to provide alternative beneficiaries for the shares of any of his children who might predecease him without leaving issue to represent them at the distribution of the estate, and did not intend to cut down to life estates or defeasible fees the shares which he had given to his children absolutely. The age of the testator and his wife when he made his will in 1900 does not directly appear from the record, but, from the fact that they had grandchildren who were seventeen years old in 1905 when the tes-

timony was taken, and that he purchased some of his real estate as far back as 1875, they must have been well advanced in life. As the testator's wife was one of the parties to whom the share of any child dying without issue was given, it is unreasonable to suppose that he intended the alternative gift 'to take effect at the death of the children whenever it might occur, as that would involve an expectation on his part that his wife would survive all of his children. That feature of the limitation over differentiates the present case from most if not all of the cases cited in which somewhat similar limitations in wills were held by us to refer to a death without issue of the legatee or devisee whenever it might occur. No gift over in favor of the testator's wife, on the death without issue of the first taker, is found in any one of the six cases, cited and mainly relied upon by the learned Judge below in his opinion filed in the case on the bill of review, in which the devise over was held to refer to a death without issue, whenever it might occur, of the devisee. The cases so cited were *Gambrill* v. *Forrest*, 66 Md. 17; *Devecmon* v. *Shaw*, 70 Md. 220; *Lednum* v. *Cecil*, 76 Md. 150; *Hutchins* v. *Pearce*, 80 Md. 434; *Weybright* v. *Powell*, 86 Md. 577, and *Wilson* v. *Bull*, 97 Md. 137.

The improbability that the testator meant to give to his wife a portion of the shares of the children who might *at any time* die without issue, is strengthened by the fact that in four-tenths of the estate the children's shares were only in the remainder after his wife's death. It is further strengthened by the fact that what is devised over on the death of a child without issue is his or her "*portion or inheritance in my estate*," which if it means anything, as was said of a similar expression construed in *Fairfax* v. *Brown, supra*, means a portion of his estate while it existed as such and not many years after its distribution as would necessarily be the case in the not improbable event that one or more of his children should long survive him and then die without issue.

The authorities generally agree that where the limitation over is simply upon the death of the devisee, uncoupled with any contingent event, the will must be construed to mean a

death in the lifetime of the testator, *Geiger* v. *Engle, supra.* In *Gerting* v. *Wells*, 100 Md. 97, we held that the limitation over in that case which was upon the death of the devisee *"without legal heirs or heir"* was precisely the same in principle as that in the prior case of *Hammett* v. *Hammett*, 43 Md. 311, where the expression used in making the limitation over was simply *"should one of them die"* with no provision as to the failure of issue.     A fuller statement of the same principle of construction and the cases supporting it may be found in 17 *A. & E. Encyl. of Law*, 537, and in *Vanderzee* v. *Slingerland*, 103 N. Y. 41, but we do not pursue this subject further as we rely for our conclusion mainly upon the will itself read in the light of the circumstances surrounding the testator when he made it.

The construction of the will adopted by us is strengthened by the proposition, so often reiterated by this Court, that where the devise itself is made directly, in unqualified terms adequate to convey a fee, to persons *in esse* and capable of taking at the death of the testator, it vests in them at his death. *Dulaney* v. *Middleton*, 72 Md. 75; *Webb* v. *Webb*, 92 Md. 101; *Cox* v. *Handy*, 78 Md. 108, and *Fairfax* v. *Brown, supra.* Our view receives additional support from the uniform indisposition of this Court to hold that an estate given by will in general terms adequate to convey a fee, which includes the *jus disponendi* of the thing devised, may be cut down to a life estate or a defeasible fee by a subsequent clause in the will. *Gerting* v. *Wells, supra; Combs* v. *Combs*, 67 Md. 11; *Benesch* v. *Clark*, 49 Md. 504; *Rogers* v. *Cobb*, 89 Md. 167; *Numsen* v. *Lyon*, 87 Md. 41.

The limitation over upon the death of a child without issue, occurring as it does in the will before us, must be held to apply also to the children's shares in the remainder in the four-tenths of the estate given to the widow for life, and must receive the same construction in that connection.   If the limitation over had in terms applied only to that portion of the estate much authority could have been found in the Maryland cases cited by us for holding that the children's death without issue upon

which the limitation was predicated meant a death during the life of the widow, as the children were only to come into possession of the remainder at her death. Indeed it may be conceded that such would have been the weight of authority in that event. But the limitation over is not in terms limited to the devises in remainder nor can its operation by any reasonable construction be restricted to those devises. The will in plain terms attaches the limitation to all of the property real and personal, which the children take under the will, the descriptive words used by the testator, in the limiting clause, being "*their portion or inheritance in my estate*," unaccompanied by any expressions of exception or restriction. The testator evidently intended the limitation over to affect all of the property of every kind taken by his children under his will.

The fact that, the limiting clause of the will applied in express terms to the entire share of each child in the father's estate which was largely composed of personalty, and that no trust was created or other provision made by the testator for the preservation of the contingent remainders over in the personalty to take effect after the death without issue of any of the children, affords further proof that the testator did not refer to or intend such a death whenever it might occur.

We are aware that in a number of comparatively recent cases this Court in construing limitations over in wills upon the death of the first taker without issue has shown an inclination to hold them to refer to such a death whenever it might occur, but in those cases either the context of the will was silent or indicated the construction adopted in the particular case. We do not mean to weaken or disturb the authority of those cases by the conclusion to which we have come in the present one, for we find in the contents of Mr. Lumpkin's will the several indications, to which we have already referred, that he intended the limitations over, of the portions of his estate given by him to his respective children, to become operative only in the event of their dying in his lifetime.

The decrees appealed from will be reversed and the cause remanded to the end that the original case may be reopened

and the appellant made a party defendant thereto and that that case and the one on the bill of review be consolidated and the final decree of January 15th, 1906, be so modified as to construe the will of Robert G. Lumpkin in accordance with the views herein expressed, but that the partition thereby made, be allowed to stand in so far as the division of the ground rents thereby made is concerned.

> *Decree reversed with costs and case remanded for further proceedings in accordance with this opinion.*